# United States Court of Appeals
## For the First Circuit

No. 00-1446

WANDA MILLS,

Plaintiff, Appellant,

v.

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Stahl and Lynch,

Circuit Judges.

Francis M. Jackson with whom Jackson & MacNichol was on brief for appellant.
Richard Fox, Assistant Regional Counsel, Office of the Chief Counsel, Region I, Social Security Administration, with whom Jay P. McCloskey, United States Attorney, James M. Moore, Assistant United States Attorney, and Robert J. Triba, Chief Counsel, Region I, were on brief for appellee.

March 22, 2001

BOUDIN, Circuit Judge. This is an appeal from a denial of social security benefits for disability and presents an issue on which the circuits are divided, namely, the treatment of proffers of new evidence on administrative review after the initial administrative decision. The claimant is Wanda Mills. Her present application for benefits was filed on December 23, 1996, and ultimately a hearing before an administrative law judge ("ALJ") was held on November 17, 1997, at which Mills was represented by counsel.

At the hearing, the controlling question was whether Mills was subject to a "disability," which had lasted or could be expected to last at least 12 months and which created an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A) (1994). Complex regulations, administered by the Commissioner of Social Security (the "Commissioner"), prescribe substantive standards and a five-step protocol for making a disability decision. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (physical impairments); 404.1520(a), 416.920(a) (mental impairments) (2000).[1]

_____

[1]Part 404 of Title 20 regulates Disability Insurance, which is available to those who have paid social security taxes for the required period; Part 416 regulates Supplemental Security

On April 7, 1998, the ALJ issued his decision rejecting Mills' claim. He found that Mills, born in 1955, had a high school equivalency diploma (her formal education ended in 9th grade). Her work history included brief stints as an assembly line worker making small medicine bottles, and as a laundry worker and chambermaid in a motel, but she had not worked since late 1993. She had previous bouts of alcoholism and of treatment for it, but had not used alcohol since November 1996. The ALJ then discussed the physical and mental health evidence on which Mills principally relied to show her disability.

On the physical side, she claimed right knee pain based on a 1979 injury to the patella and said that the knee sometimes gave out. But the medical examination showed no tenderness and good stability, save for some unsteadiness in arising. The examining doctor found that there was no objective evidence of injury but that Mills "may have ‹mild' arthritis of her right knee." The ALJ did not consider this a severe impairment whether considered alone or in conjunction with other symptoms. He also rejected Mills' claims of lower back pain as unsupported by any objective medical evidence.

---

Income, which applies if a claimant has not paid the requisite taxes. The regulations here pertinent mirror one another so we refer only to Part 416. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989) (per curiam).

As to mental health, Mills said that she was subject to panic disorder but a consulting psychologist said that her symptoms did not amount to panic disorder and the ALJ said that this claim was not established by objective evidence. The ALJ agreed that the evidence did show that Mills suffered from "a dysthymic disorder," a form of depression that is less than major; but the ALJ said that Mills was able to care for her personal needs and to manage her funds and do ordinary household tasks. He concluded that nothing prevented her from returning to a prior unskilled job as an assembly line worker or as a laundry worker in a motel.

Mills requested review by the Appeals Council, 20 C.F.R. § 416.1467, and submitted two new pieces of evidence. One was an October 8, 1998, "progress note" by Dr. Garnett; this physician confirmed the diagnosis of dysthymia, said that Mills was subject to panic disorder with agoraphobia, and prescribed an antidepressant. The other evidence was the report of a social worker, Ms. Joy, who saw Mills on November 30, 1998; Joy's assessment was that Mills was oriented and attentive but had poor memory and uncertain judgment. Joy recommended a psychiatric evaluation.

On January 21, 1999, the Appeals Council denied review, stating that the ALJ's decision stands "as the final decision"

of the Commissioner of Social Security.  20 C.F.R. § 416.1481.
The denial was signed by an administrative appeals judge who, on
March 24, 1999, wrote Mills' lawyer a separate letter discussing
the Garnett and Joy reports.  The letter said that the findings
in the reports were "consistent" with those in the record before
the ALJ and "thus" did not provide a basis for disturbing the
ALJ's decision.  The letter said that the additional evidence
would "be made part of the transcript in this case."

Mills filed a statutory review action in the district
court, 42 U.S.C. § 405(g), where the matter was referred to a
magistrate judge.  In a recommended order on November 24, 1999,
the magistrate judge urged that the Commissioner's decision be
vacated and remanded for further proceedings.  This
recommendation rested primarily on the magistrate judge's view
that the Garnett evidence created a conflict with the ALJ's view
that Mills did not have a serious panic disorder and that a
remand was needed to determine whether the panic disorder was
present and, if so, whether its symptoms impaired Mills'
capacity for work.

Alternatively, the magistrate judge said that the ALJ
had erred in rejecting, without medical evidence, the earlier
assessment of an examining physician consultant (Dr. Doane),
that Mills "may" have knee problems sufficient to prevent

standing for more than several hours at a time or walking more than a block without stopping; while the magistrate judge agreed that the condition was not shown to be severe, he deemed it relevant. Finally, the magistrate judge found that Mills had waived a claim that her prior work history was too sporadic to be used as a baseline in determining whether work was available to her.

On review of the Commissioner's objections, the district court rejected the magistrate judge's recommendation of a remand. Mills v. Apfel, 84 F. Supp. 2d 146, 148-49 (D. Me. 2000). In its decision, the district court said that the new evidence submitted to the Appeals Council could not be considered because that body's refusal to grant review left the ALJ's decision as the only one before the court and it had to be judged on the evidence before the ALJ. Id. at 148. As for the knee problem, the district court said that the Doane assessment was qualified ("may") and conflicted with the report of two non-examining doctors and, in any event, the ALJ could draw a common-sense inference that the condition was mild. Id. at 149. The court agreed with the magistrate judge that the claim of sporadic work history had been waived. Id. at 150.

On this appeal, Mills' counsel ably builds arguments around each of the three issues touched on by the district

court.  We begin with the most difficult, which concerns the evidence tendered to the Appeals Board after the ALJ decision. Because the Appeals Board "denied review" (at least nominally), the Commissioner says that we may review only the ALJ decision, judging it solely on the evidence presented to the ALJ.  Four circuits have taken this position, at least in part; by contrast, five circuits say that judicial review tests all evidence submitted to the ALJ <u>and</u> to the Appeals Council, even if the latter declines to review the ALJ decision.[2]

For us, neither legal position, if treated as absolute, is entirely satisfactory.  To weigh the new evidence as <u>if</u> it were before the ALJ would be, as one court fairly observed, a very "peculiar" enterprise, <u>Riley</u>, 18 F.3d at 622, and (to us) one that distorts analysis.  The ALJ can hardly be expected to evaluate or account for the evidence that he never saw.  At best, the reviewing court ends up asking and answering some

---

[2]<u>Compare</u> <u>Matthews</u> v. <u>Apfel</u>, 239 F.3d 589, 593-94 (3d Cir. 2001) (only considering evidence presented to the ALJ), <u>Falge</u> v. <u>Apfel</u>, 150 F.3d 1320, 1323 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1124 (1999), <u>Cotton</u> v. <u>Sullivan</u>, 2 F.3d 692, 696 (6th Cir. 1993), <u>and</u> <u>Eads</u> v. <u>Sec'y of the Dep't of Health & Human Servs.</u>, 983 F.2d 815, 817 (7th Cir. 1993), <u>with</u> <u>Perez</u> v. <u>Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996) (considering new evidence submitted to the Appeals Council after the ALJ's decision), <u>O'Dell</u> v. <u>Shalala</u>, 44 F.3d 855, 859 (10th Cir. 1994), <u>Riley</u> v. <u>Shalala</u>, 18 F.3d 619, 622 (8th Cir. 1994), <u>Ramirez</u> v. <u>Shalala</u>, 8 F.3d 1449, 1454 (9th Cir. 1993), <u>and</u> <u>Wilkins</u> v. <u>Sec'y Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

other question without properly articulating it--which is a recipe for confusion (e.g., how likely is it that this evidence would alter the result if it had been before the ALJ).

The Commissioner has muddled the matter by directing that material new evidence may be provided to the Appeals Council and that such evidence becomes part of the record. 20 C.F.R. § 416.1470(b). Several circuits have relied on this regulation (or its counterpart in Part 404) to justify court review of the ALJ's decision based on the new evidence. E.g., O'Dell, 44 F.3d at 859. But this conflates the question whether the documents are part of "the record" with the question whether--if Appeals Council review is declined--they are part of the evidence against which the ALJ's decision should be tested in court. See Eads, 983 F.2d at 817. We doubt that the regulation was intended to resolve the latter issue.

Nor do we think that Mills' "review all the evidence" position is helped by Sims v. Apfel, 120 S. Ct. 2080 (2000). The Court there rejected a waiver claim and allowed a social security applicant to raise in court an issue not raised at the Appeals Council stage. Id. at 2086. But that is entirely different from failing to offer evidence in the first instance to the ALJ, which is far more disruptive of the review function. In any event, Justice O'Connor's "swing vote" in Sims rested on

-9-

the distinct and narrow ground that the regulations there in question might have misled applicants as to the duty to raise issues in the Appeals Council. Id. at 2086-87 (O'Connor, J., concurring in part and concurring in the judgment). Thus, we agree with the Commissioner's view that we may review the ALJ decision solely on the evidence presented to the ALJ.

Yet we reject the other half of the Commissioner's position, namely, that we may not review the Appeals Council even where it has given a mistaken reason for refusing further review. The statute permits review of "the final decision of the Commissioner" without specifying components, 42 U.S.C. § 405(g); the Commissioner relies heavily on his regulation saying that, where review is denied, the ALJ's decision becomes that of the Commissioner. 20 C.F.R. § 416.1481. It is very doubtful that this regulation was intended to do more than define the end of the administrative process, and we decline to read it as determining which administrative determinations made along the way are subject to judicial review.

It is quite true that an Appeals Council decision refusing review has all the hallmarks of a discretionary decision: the Appeals Council need not and often does not give reasons, and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases

-10-

should be reviewed.  See 20 C.F.R. § 416.1470.  But since Service v. Dulles, 354 U.S. 363 (1957), it has been well established that a discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error.  The denial of judicial review in such an instance is very much the exception.  See N.A.A.C.P. v. Sec'y of Hous. & Urban Dev., 817 F.2d 149, 157-58 (1st Cir. 1987) (Breyer, J.).

The impulse to preserve some role for the courts, where the administrative decision rests on an articulated but severely mistaken view, is borne out by the cases.  Two of the leading circuit decisions on the social security scheme--opposed to each other on the question whether the ALJ should be reviewed based on new evidence--assume that an Appeals Council denial of review is itself reviewable to some degree and in some limited circumstances.[3]  We join these circuits in holding that an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action.

---

[3]Compare Riley, 18 F.3d at 622 (recognizing the appropriateness of remand if the Appeals Council refuses to consider new evidence in the mistaken belief that it is not "new" and "material") (M. Arnold, J.), with Eads, 983 F.2d at 817 (allowing judicial review of the Council's refusal to review an ALJ's decision when the "refusal rests on a mistake of law") (Posner, J.).  But see Matthews, 239 F.3d at 594 ("No statutory authority . . . authorizes the court to review the Appeals Council decision to deny review.").

This position makes practical sense as well. For the most part, the review problem with which we are concerned arises in social security cases where new evidence is tendered after the ALJ decision. In most other situations, a mistake by the ALJ that is otherwise correctable by a court can be addressed on judicial review <u>regardless</u> of any denial of review by the Appeals Council. The ALJ has not "made a mistake" in ignoring new evidence that was never presented to him. However, the Appeals Council may have "made a mistake" in refusing to consider new evidence presented to it, depending on the ground it gave. The question is whether or not such a mistake can be corrected where it can be readily discerned and no other means of relief exists.

The courts already have the statutory authority to remand for further proceedings where new evidence is presented after the ALJ decision if the evidence is material <u>and</u> good cause is shown for the failure to present it on a timely basis. 42 U.S.C. § 405(g). The problem is with the "and": under the Commissioner's regulations, the Appeals Council is free to consider new material evidence regardless of whether there was good cause for not producing it earlier; the court is not free to order a remand absent such good cause. This is Mills' very

situation since she has never shown good cause for failing to offer the Garnett evidence or its like to the ALJ.

In such a situation, if the Appeals Council mistakenly rejected the new evidence on the ground that it was not material, we think that a court ought to be able to correct that mistake on the Service v. Dulles principle. This is so even though we assume that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal. This is not a serious anomaly: there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple "review denied" decisions that the Appeals Council must issue every year.

The Appeals Council in this case did not say that the new evidence was immaterial but rather that it was "consistent" with the existing record and "thus" did not justify disturbing the ALJ decision. We owe such assessments great deference, see Dugan v. Ramsay, 727 F.2d 192, 195 (1st Cir. 1984), but they are ordinarily not beyond review in extreme cases. A serious mistake by the Appeals Council in denying review on such a ground should itself be reviewable in court (again, only where articulated). However, on the present facts, our conclusion is that the Appeals Council slightly overstated the case in

describing the new evidence as "consistent," but not in a way that undermines its refusal to alter the ALJ's conclusion.

In the record compiled in the ALJ proceeding, two different reports noted that Mills had alleged panic attacks; but both made a diagnosis of less than major depression, and neither of the reports deemed Mills subject to panic attacks sufficiently severe to be listed as an anxiety disorder. Garnett's report, by contrast, describes Mills as "still complain[ing] of anxiety symptoms which indeed do have a strong Agoraphobic quality to them in that she feels very uncomfortable and ‹fearful' when she is around other people" as well as in episodes at home. Garnett's own final assessment listed not only dysthymia but also "panic disorder with Agoraphobia."

Still, panic disorders may range widely, from slight to disabling, American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 397-98 (4th ed. 1994), and Garnett made no assessment of severity. Indeed, one of the reports before the ALJ (although not the one on which he relied) had seemingly deemed the panic risk real but limited, recommending only that Mills work in small group settings rather than "with the public." So viewed, Garnett's assessment differs from the earlier evidence only by degree, and it is hard to say

without more from Garnett that the difference is very substantial.

What is worse for Mills is that nothing in Garnett's assessment suggests that the panic level meets the fairly stiff and precise criteria to be a "listed" condition[4] or its equivalent or that, although not in this category, it has the practical effect of preventing Mills from engaging in her past employment. And, by explicit regulation, it was Mills' burden to produce evidence showing one or the other. 20 C.F.R. § 416.912; see also Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam).

Thus, in brushing aside the new evidence as not "inconsistent," the Appeals Council may well have meant that similar allegations and a more modest finding were before the ALJ. At the very least, it surely meant that panic attacks without more do not conflict with the finding of the ALJ that Mills had not proved herself disabled. Indeed, absent some indication of the severity of the panic attacks, Garnett's

---

[4]A listed condition means an automatic disability finding. See 20 C.F.R. § 416.920(d); see also 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00. For anxiety conditions, this requires that various sets of symptoms be proved and that those symptoms have adverse consequences on daily activities. For example, an individual would have a listed condition if they had recurrent (at least once a week) severe panic attacks manifested by a sudden onset of fear and such symptoms led to a "frequent failure to complete tasks in a timely manner." Id.

report as it stands would not undercut the ALJ decision even if--contrary to our holding--we simply treated the report as part of the evidence before the ALJ, as many other circuits would do.

The Appeals Council must review a case only if the ALJ's decision is "contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b). Yes, the Garnett report was material and thus the Appeals Council was required to consider it initially in deciding whether to grant review. Id.. But no one could run an administrative regime that handles more than 100,000 cases a year, see Sims, 120 S. Ct. 2088-89 (Breyer, J., dissenting), without judging whether new material evidence warranted a new hearing. Here, the Appeals Council's action is entirely reasonable, even if its language was not perfectly apt.

Less needs to be said about Mills' other two claims of error. The more concrete stems from Mills' claim that she suffered severe pain in her right knee compromising her ability to walk or stand for long periods. The ALJ saw little objective evidence of such a condition; the examining doctor found no evidence of tenderness and said that Mills had good stability in all directions. If this were all, it would be the end of the matter. The regulations place much weight on objective evidence and the ALJ may disregard subjective claims of pain if they are

unsubstantiated and he does not credit them.  20 C.F.R. § 416.929; accord Rodriguez-Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam), cert. denied,  484 U.S. 1012 (1988).

However, as the magistrate judge noted, the examining doctor ended by saying that Mills "may" have difficulty standing "for more than several hours at a time" or "walking more than a block without stopping."  The magistrate judge said that this medical opinion could not be disregarded by the ALJ, a mere layman, without medical evidence on the other side, and he said that such limitations were inconsistent with the ALJ decision that Mills could return to prior work as an assembly line worker or laundry worker at a motel.

Just what weight should be given to a "may" diagnosis is itself a difficult question whose answer may depend very much on context.  Nor is it clear how far the limitations, if they existed, would prevent assembly line work or laundry work; it might well depend on the nature of the particular jobs and on having more information about the limitations.  It is unnecessary to pursue these issues, however, because read as a whole the impressively nuanced report of Dr. Doane makes it quite clear that he did not think that the knee pain disabled Mills.

-17-

On the contrary, after reporting the claim of back and knee pain, Doane concluded, "I find she likely has only mild disability regarding low back syndrome and right knee pain." Then, after mentioning the possible limitations on standing and walking already discussed, he said that there was "no impairment in lifting, carrying, bending, [or] handling objects" and that Mills' "deconditioned" physical state would improve "with a gradual re-introduction to the work place." It is evident that Doane did not regard Mills as disabled from working and expected her to return to work.

In an extreme case one might accept the doctor's medical findings but reject his conclusion as to its significance for capacity to work. But with knee pain, frequency and degree are likely to be controlling in relation to low skill jobs (Mills was not a race car driver); and we are left with the doctor's judgment that Mills' condition was "mild" and a return to work expected. Thus even if we treated the doctor's medical opinion as binding on the ALJ, it is hard to see it as inconsistent with the ALJ's conclusion, whether taken alone or in relation to her mental state.

Mills' last claim may on its face appear to have the most merit. It turns out that Mills' earlier employment was extremely brief--a month on the assembly line, a week in the

motel laundry, and a week as a chambermaid. This is of concern because the regulations provide that prior employment is to be disregarded by the Commissioner where it is merely sporadic, which Mills says is the proper way to view her situation. 20 C.F.R. § 416.965(a). Thus, according to Mills, the ALJ should not have considered whether Mills could return to her prior jobs, but should have instead required the Commissioner to show that there were other jobs reasonably available to Mills that she could perform. See 20 C.F.R. § 416.920(f); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).

The magistrate judge and the district judge rejected this claim not on the merits but because they deemed it waived, no mention of it having been made to the ALJ or the Appeals Council. On appeal to this court, Mills says that she was given insufficient opportunity to debate the waiver issue in the district court--which is wrong--and that the waiver conclusion is wrong on the merits: first, because it is inconsistent with Sims and second, because it was the ALJ's independent obligation to get the matter right.

Until the Commissioner amends his regulations, as Sims suggested he could, failing to raise an issue at the Appeals Council level probably does not debar a claim that the ALJ

-19-

erred. But we have no intention of extending this rule, if it is one (only four members of the Court endorsed it), to the failure of an applicant to raise an issue at the ALJ level. Cf. Sims, 120 S. Ct. at 2089 (Breyer, J., dissenting). The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process.

This case is a perfect illustration. If the ALJ had heard the objection now made and agreed with it, he could easily have considered and expressly found that there were other jobs in the economy available to Mills. Here, the ALJ stopped at step four of the five-step process when he found that Mills could return to her old jobs; but if the prior jobs had been removed from the picture he would have proceeded to step five to consider whether there were other jobs in the economy available to her.

As it happens, the result would be no different in this case even if we disregarded the waiver and assumed that Mills' past employment should be disregarded. In some situations, the conclusion that an impairment blocks the applicant from returning to a prior job raises a serious issue whether there is any other job available in the economy for that person. This may easily be so where the prior job involved special skills or

capabilities and the impairment flatly precludes a return to that job while creating doubts that anything else will be available.

But in this case it made no difference whether Mills had a prior job on an assembly line or as a motel laundress. So long as she had the capability to perform these jobs, which is what the ALJ found, such jobs (or substantially similar ones) clearly exist in the economy. Thus, Mills would not have benefitted had the ALJ ignored her past work experience in favor of considering her ability to obtain alternative employment.

This is a distressing case. Mills obviously suffers from some impairments, physical and mental; has had a hard life; has few resources to meet the demands of the work-a-day world; and may not be too far from the line, especially vague where mental conditions are at the fore, that separates multiple handicaps from full disability. While Mills appears to be outside the time period for reopening based on new evidence, there is nothing that prevents a new application directed to the future, assuming she can muster the medical support to show the severity of her conditions.

Affirmed.