Orben v. SSA                        CV-01-186-M    01/15/02   P
                UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Kimberly Orben, on behalf of
her minor son, Chad Jasperson,
      Claimant

      v.                                Civil No. 01-186-M
                                        Opinion No. 2002 DNH 005
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Defendant


                          **O R D E R**


      Kimberly Orben moves to reverse the Commissioner's denial of

her son's application for children's Supplemental Security

Insurance disability benefits.  <u>See</u> 42 U.S.C. §§ 405(g) and

1383(c)(3) (the "Act").  Among other things, she says the

Administrative Law Judge who authored the Commissioner's final

decision did not explain the bases for that decision with

sufficient specificity, and he misread the evidence of record.

Respondent objects and moves for an order affirming the final

decision of the Commissioner.

**Factual Background**

I.   <u>Procedural History.</u>

Orben filed an application for Supplemental Security Income benefits on behalf of her son, Chad, with a protective filing date of July 23, 1997. The application represented that Chad was born on October 19, 1992, and had been disabled since August 16, 1993. It was denied both initially and on reconsideration. Claimant then filed a timely request for a hearing before an Administrative Law Judge.

On August 26, 1998, an ALJ conducted a hearing at which Ms. Orben testified. She was represented by counsel and accompanied by Chad's step-father, Douglas Orben (who did not testify). Chad, who was six years old at the time, was not present. On November 8, 1998, the ALJ issued his decision, in which he concluded that Chad was not disabled within the meaning of the Act and, therefore, was not entitled to SSI benefits. At that point, claimant supplemented the record with new evidence tending to show that Chad was disabled and, in light of that new evidence, asked the Appeals Council to review the ALJ's adverse

2

disability determination.  The Appeals Council denied claimant's request for review.

Parenthetically, while the Appeals Council declined to "review" the ALJ's disability determination in the technical sense of the term, it necessarily "reviewed" or examined the record evidence as well as the ALJ's ultimate conclusions, in the ordinary sense, prior to reaching that decision.  As the Council noted in its letter to Ms. Orben, it may only "review" an ALJ's decision if it is persuaded that:

> (1) there appears to be an abuse of discretion by the Administrative Law Judge; (2) there is an error of law; (3) the Administrative Law Judge's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest.

Transcript at 6.  Consequently, in declining claimant's request that it "review" the ALJ's decision, the Appeals Council examined the record and the ALJ's decision and concluded, among other things, that the decision <u>was</u> supported by substantial evidence in the record (necessarily including the supplemental evidence presented after the ALJ made his decision).  <u>See, e.g.</u>, <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996) ("even when the Appeals

3

Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's decision.").

Following the Appeals Council's decision not to "review" the ALJ's adverse disability determination, claimant filed this action and moved the court to reverse the Commissioner's decision. The Commissioner objects and seeks to have his final decision affirmed.

II. <u>Stipulated Facts</u>.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 9), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. <u>Properly Supported Findings by the ALJ are</u>
<u>Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1]

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, where credibility determinations are supported by specific findings, the court will afford them substantial

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

5

deference.  See Frustaglia v. Secretary of Health and Human
Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v.
Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir.
1986)).


II.  Entitlement to Children's Disability Benefits.

In August of 1996, prior to claimant's having filed an
application for benefits on behalf of Chad, the President signed
into law the Personal Responsibility and Work Opportunity
Reconciliation Act of 1996 (the "PRWORA"), which included a new
(more rigorous) standard for defining childhood disabilities
under the Social Security Act.

> An individual under the age of 18 shall be considered
> disabled for the purposes of this subchapter if that
> individual has a medically determinable physical or
> mental impairment, which results in marked and severe
> functional limitations, and which can be expected to
> result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12
> months.

42 U.S.C. § 1382c(3)(C)(i).  See also 20 C.F.R. § 419.906.


In evaluating a child's application for SSI benefits, an ALJ
must engage in a three-part inquiry and determine whether: (1)

the child is engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment is equivalent in severity to that of a listed impairment (i.e., whether it "results in limitations that functionally equal the listings"). 20 C.F.R. § 416.926a(a).

In this case, at step three of the sequential analysis, the ALJ concluded that Chad's impairments did not meet, and were not medically or functionally equal in severity to, a listed impairment. Accordingly, he concluded that Chad was not disabled within the meaning of the Act.

## Discussion

I. <u>Record Evidence Not Presented to the ALJ, But Submitted to the Appeals Council</u>.

This case presents an issue that has been discussed by nearly all of the courts of appeals, and one recently addressed

7

by the First Circuit: how new and relevant evidence proffered by the claimant _after_ the ALJ issues his or her opinion denying benefits, but _prior_ to the Appeals Council's refusal to "review" that decision, should be considered (if at all) upon judicial review. Neither party has identified or addressed that critical issue. But, because the question is one of law, and given the importance of resolving this proceeding in as timely a manner as is reasonably possible, the court concludes that additional briefing by the parties will not be required.

In _Mills v. Apfel_, 244 F.3d 1 (1st Cir. 2001), _cert. denied_, __ S.Ct. __, 2002 WL 13365 (Jan. 7, 2002), the court of appeals for this circuit noted that other circuits had addressed the supplemental evidence issue in two distinct ways:

> We begin with the most difficult [issue], which concerns the evidence tendered to the Appeals Board after the ALJ decision. Because the Appeals Board "denied review" (at least nominally), the Commissioner says that we may review only the ALJ decision, judging it solely on the evidence presented to the ALJ. Four circuits have taken this position, at least in part; by contrast, five circuits say that judicial review tests all evidence submitted to the ALJ _and_ the Appeals Council, even if the latter declines to review the ALJ decision.

8

Id., at 4 (emphasis in original). Finding both positions deficient, the court fashioned a distinct rule for application in this circuit. In creating that rule, the court observed that the Social Security Act "permits review of the 'final decision of the Commissioner' without specifying components." Id., at 5. Building upon that observation, the Mills court appears to have held that, when reviewing the final decision of the Commissioner denying a claimant's application for Social Security benefits under circumstances such as those presented in this case (i.e., when material supplemental evidence is presented to the Appeals Council), a district court must engage in a two-step inquiry, evaluating each of the "components" of the Commissioner's final decision.

First, the court reviews the ALJ decision, but the scope of that review is limited: it must be based "solely on the evidence presented to the ALJ." Id. Presumably, that review remains subject to the familiar "supported by substantial evidence in the record" test. See 42 U.S.C. § 405(g). Next, applying a far more deferential standard of review, the court examines the Appeals Council's refusal to review the decision issued by the ALJ,

9

asking whether the Appeals Council gave "an egregiously mistaken ground for this action." Mills, 244 F.3d at 5.

At least in this circuit, then, the final decision of the Commissioner is comprised of two components: the ALJ's written decision and the Appeals Council's response to a claimant's request for review. And, decisions of the Appeals Council declining review, in turn, fall into one of two categories: those that give an explanation for declining review, and those that give none at all. The court of appeals noted that in those cases where no ground or reason is given by the Appeals Council, its decision is "effectively unreviewable." Id., at 6. If it is apparent, however, that "the Appeals Council mistakenly rejected the new evidence on the ground that it was not material, . . . a court ought to be able to correct that mistake." Id.[2]

_____

[2] By adopting the view that the final decision of the Commissioner is comprised of two distinct "components," the Mills opinion somewhat complicates the analysis that must be undertaken in situations such as this. The Social Security Act makes plain that the district court must simply determine whether the "final decision of the Commissioner" is legally correct and "supported by substantial evidence" in the record. 42 U.S.C. § 405(g). The Supreme Court has, in turn, observed that, when the Appeals Council denies the claimant's request for review, "the ALJ's opinion becomes the final decision" of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000). And, finally, the pertinent regulations make clear that supplemental evidence provided to the

While the merits of the <u>Mills</u> rule are certainly debatable, there can be no doubt as to what it is, or that it applies in this circuit. Applying the <u>Mills</u> rule to this case, then, it is plain that the Appeals Council made a serious mistake in denying review of the ALJ's decision based upon the record before it, including the new evidence submitted by the claimant. It is

Appeals Council constitutes part of the administrative record. <u>See</u> <u>Id.</u>, at 111 (citing 20 C.F.R. § 404.970(b)). <u>See also</u> <u>Mills</u>, 244 F.3d at 4. Thus, the judicial review function should be relatively straightforward: determine whether the final decision of the Commissioner (i.e., the opinion written by the ALJ) is legally correct and supported by substantial evidence in the entire record presented to the Commissioner (regardless of what evidence was actually presented to the ALJ at an interim step in the administrative process).

Although raised as a potential concern in <u>Mills</u>, the court need not ask "how likely is it that this [supplemental] evidence would [have] alter[ed] the result if it had been before the ALJ." <u>Mills</u>, 244 F.3d at 4. That is never a question asked by the district court (consider, for example, the situation in which an ALJ errs by failing to adequately develop the record by neglecting to solicit material testimony from a claimant). Instead, the court would focus on the entire record that was before the Commissioner and ask whether her final decision (as written by the ALJ) is supported by substantial evidence in that record (or, stated somewhat differently, whether, in light of the supplemental evidence presented by the claimant, the Commissioner was justified in allowing the ALJ's decision to become her own "final decision"). Because the court's focus must, by statute, be on the <u>Commissioner's</u> final decision, it does not seem inappropriate to assess that decision in light of all the evidence that was made available to her.

11

equally clear that the Appeals Council gave an egregiously mistaken ground for declining "review."

The supplementary evidence submitted by claimant was not only starkly inconsistent with the ALJ's determination, but substantially undermined it. The Appeals Council's denial of review on grounds that the supplemental evidence did not "provide a basis for changing the Administrative Law Judge's decision," transcript at 6, constituted an egregious mistake, as explained below.

II. <u>Evidence of Chad's Disability</u>.

A. "Mild" vs. "Severe" Tourette Syndrome.

Chad was four years old when an application for SSI benefits was filed on his behalf and six years old at the time of the ALJ's decision. By then he had been diagnosed with the following disorders: lead poisoning; oppositional defiant disorder; attention-deficit/hyperactivity disorder ("ADHD"); obsessive compulsive disorder ("OCD"), which included behaviors such as compulsive hand washing and toy washing; and Tourette syndrome, which manifested itself in various ways over the years, but

included eye, facial, and violent head tics, vocal tics (e.g.,
stuttering, grunting, hissing, snorting, growling), and
copropraxia (in Chad's case, involuntarily "giving the finger" to
people). Standardized testing suggests that he is of low to
borderline intelligence.

Claimant says the ALJ erroneously interpreted and/or failed
to adequately consider (and discuss) record evidence that
supported a finding of disability. First, she says the ALJ erred
in concluding that "Chad has also been diagnosed with . . . mild
Tourette's Syndrome." Transcript at 16 (emphasis supplied).
Claimant concedes that Chad's treating pediatric neurologist, Dr.
Woods, initially diagnosed a mild form of Tourette Syndrome when
she first examined him in February, 1988. See Transcript at 277
(concluding that Chad "may have a mild form of Tourette
syndrome," but observing that she would "have a better idea about
Chad's tic diagnosis, whether he truly has Tourette or not, as
the year progresses."). In subsequent medical notes, however,
Dr. Woods repeatedly refers to Chad's condition simply as
Tourette syndrome (i.e., without the "mild" modifier). See,
e.g., Transcript at 284, 286. By June of 1998, Dr. Woods had

13

concluded that Chad suffered from "Tourette syndrome with ADHD . . . [which] significantly and adversely affect his ability to function in an educational setting." Transcript at 286.

By December of 1998, the profound nature of Chad's illness had become even more apparent to Dr. Woods. After having had the opportunity to monitor Chad's behavior and development for approximately 10 months, Dr. Woods concluded that he suffered from "_severe_ Tourette syndrome with associated ADHD [attention deficit and hyperactivity disorder] and OCD [obsessive compulsive disorder]." Transcript at 304 (emphasis supplied). Dr. Woods' December progress notes were not, however, presented to the ALJ. Instead, they were submitted to the Appeals Council, _after_ the ALJ issued his decision and prior to its determination that there was no basis to "review" the ALJ's decision.

In light of the record evidence, particularly the most recent notes from Chad's treating neurologist, it is manifestly clear that the record evidence does not support the conclusion that Chad suffers from "mild" Tourette syndrome. While it would be unfair to criticize the ALJ's conclusion in that regard, since

14

he did not have the benefit of all the evidence presented to the Appeals Council, the Council's decision not to "review" the ALJ's disability determination in light of that evidence is more difficult to explain or justify.

B.    Chad's Obsessive-Compulsive Behavior.

Next, claimant challenges the ALJ's conclusion that "there is no mention in the medical records of obsessive-compulsive type activity." Transcript at 17. To be sure, as claimant points out, the record contains several references to Chad's compulsive behavior (including, for example, compulsive hand washing and toy washing) and repeated notes from Dr. Woods in which she diagnosed Chad as suffering from Tourette syndrome "with associated OCD [obsessive-compulsive disorder] tendencies and behaviors consistent with ADHD." Transcript at 300. See also id., at 302 (same), 304 ("severe Tourette syndrome with associated ADHD and OCD"), and 306 ("Chad is a complex six-year old boy [who] has a two year history of Tourette syndrome with multiple motor and vocal tics. Chad has [a] combined diagnoses of ADHD and OCD. Chad has ongoing severe problems with impulse control.").

15

Again, however, that evidence was not presented to the ALJ. Consequently, he cannot be criticized for observing that "there is no mention in the medical records of obsessive-compulsive type activity." Transcript at 17. The record on which the ALJ based his decision did not contain any references to OCD. The record before the Appeals Council, as supplemented by claimant after the ALJ's decision, did, however, include repeated references to Chad's compulsive behavior and OCD. That evidence plainly reveals that Chad suffers from obsessive-compulsive behavior that, no doubt, would have had a substantial impact on the ALJ's disability determination. Had the ALJ had access to that medical information, he plainly would have realized Chad was not simply a young boy with "mild" Tourette Syndrome and some behavioral problems, but instead suffered from severe Tourette Syndrome and was diagnosed with both OCD and ADHD (as well as several other ailments or illnesses).

C.    Chad's Prescription Medications.

Claimant also challenges the ALJ's conclusion regarding the prescription medications that Chad was taking. Although the ALJ acknowledged that Chad was taking Clonidine daily, he apparently

16

discounted Ms. Orben's testimony on the subject and found that there was no evidence in the record to support her claim that Chad was also taking other prescription medications. Specifically, the ALJ concluded that, "Ms. Orben also stated that Chad takes Ritalin, Paxil, and Prozac but there is no evidence in file of these being prescribed." Transcript at 17. But there actually is support in the record presented to the ALJ for Ms. Orben's claim that Chad was prescribed Ritalin and Prozac. See, e.g., Transcript at 262, 276. And, as before, the supplemental medical records provided to the Appeals Council clearly disclose that Chad had been prescribed (and suffered ill side-effects from) several prescription medications, including Ritalin, Paxil, Prozac, Risperdal, and Nortriptyline. See Transcript at 300, 302, 304, 305.

Consequently, the ALJ appears to have had a mistaken understanding of the prescription medications that Chad was taking and, presumably, the substantial adverse side effects they had upon him. That oversight might easily be explained, since the references in the record before the ALJ to Chad's prescription medications (and their side-effects) were few and

17

did not stand out in the voluminous record.  The Appeals Council, however, had the benefit of materials that much more clearly listed and highlighted the many medications that Chad was currently taking or had previously been prescribed.

D.    Chad's Social Worker's Disability Assessment.

Finally, claimant challenges the ALJ's failure to adequately discuss what she considers to be substantial record evidence supportive of her claim that Chad is disabled.  That is to say, claimant says the ALJ focused almost exclusively on evidence suggestive of no disability, and ignored or improperly discounted evidence that suggested Chad was, in fact, disabled.

For example, claimant challenges the ALJ's failure to discuss Chad's scores on two global assessments of functioning (GAF) tests, on which Chad received scores of 45 (October, 1996) and 48 (July, 1998).  Transcript at 245, 290.  The parties agree that, according to the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (also known as "DSM-IV"), Chad's test results demonstrate that he suffers from serious impairments in social, occupational, or school functioning.  See Joint

18

Statement of Material Facts at 4, n.1. The ALJ's decision does not discuss those test results.

Claimant also asserts that the ALJ erroneously discounted the opinion of Karla Tolomeo, MSW, Chad's councilor from Manchester Mental Health, who opined that Chad suffered from "marked limitations" in all areas of functioning (i.e., cognitive function, motor function, social function, personal function, and concentration). Although he acknowledged Ms. Tolomeo's opinion, the ALJ concluded that it was "not substantiated by ongoing treatment notes," Transcript at 21, and was inconsistent with, among other things, the opinions of Chad's treating neurologist, Dr. Woods. The record does, however, contain Ms. Tolomeo's treatment notes (as well as those from other counselors at Manchester Mental Health), which document the treatment sessions she conducted with Chad over the course of approximately eight months and provide at least some support for her conclusions regarding his ability to function. See Transcript at 247-54, 288-95. The ALJ did not, however, discuss those notes (or explain why he did not consider them relevant).

Additionally, the medical progress notes prepared by Chad's treating neurologist, Dr. Woods, and submitted to the Appeals Council, provide substantial support for Ms. Tolomeo's opinions. Plainly, the ALJ cannot be faulted in any respect for having failed to consider evidence that was never presented to him. The Appeals Council, however, had the benefit of that evidence and, nevertheless, declined to act. As the Supreme Court has observed, Social Security proceedings are inquisitorial rather than adversarial and it is no less the obligation of the Appeals Council than the ALJ to consider and develop arguments both for and against granting benefits. See Simms v. Apfel, 530 U.S. 103, 110-111 (2000).

III. Evaluating the Appeals Council's Decision.

For the reasons discussed above, the court cannot conclude that the ALJ's decision lacks substantial support in the record as presented to him. That conclusion does not, however, end the court's inquiry. As mandated by Mills, the court must next determine whether the Appeals Council's refusal to "review" (i.e., vacate, alter, or remand) the ALJ's decision was "egregiously mistaken." Mills, 244 F.3d at 5.

20

Even applying that very deferential standard of review, the court concludes that the Appeals Council's determination that "there is no basis . . . for granting your request for review," transcript at 6, was an "egregious error" and "a serious mistake." Mills, 244 F.3d at 5-6. Largely through no fault of the ALJ, the Commissioner's final decision is "contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b) (emphasis supplied). In light of the evidence available to the Appeals Council, the decision not to "review" the ALJ's disability determination cannot be sustained.[3]

---

[3] The opinion in Mills provides little guidance regarding what constitutes an "egregious error." Nevertheless, while obviously not binding precedent, an unpublished opinion of the court of appeals provides some hint. In Brunel v. Commissioner, Social Security Administration, No. 00-1142, 2000 WL 1815946 (1st Cir. Dec. 11, 2000), the court concluded that an ALJ committed an "egregious" error when he "cited the claimant's treating doctor's RFC evaluation in support of his own RFC findings, while ignoring, without any explanation, that part of the doctor's evaluation which indicated that claimant's capacity for sedentary work was significantly compromised." Id., at *2. Similarly, in this case, the Appeals Council's failure to review the ALJ's decision in light of the compelling new evidence before it - an error of substantially greater dimension than that identified in Brunel - was also "egregious."

21

As observed in <u>Mills</u>, "The ALJ has not 'made a mistake' by ignoring new evidence that was never presented to him. However, the Appeals Council may have 'made a mistake' in refusing to consider new evidence presented to it, depending on the ground it gave." <u>Id.</u>, at 5.[4] Here, the Appeals Council concluded that, even considering the newly submitted evidence, the ALJ's disability determination was not "contrary to the weight of the evidence currently of record." Transcript at 6. It was. That error was sufficiently egregious to warrant remand. <u>See</u> <u>Mills</u> 244 F.3d at 5-6. At a minimum, the ALJ should be afforded the opportunity to revisit his disability determination in light of the compelling evidence claimant provided to the Appeals Council, but which the ALJ never had the chance to review.

## Conclusion

The Commissioner's motion for an order affirming the Commissioner's decision (document no. 8) is denied. Claimant's

---

        [4] Strictly speaking, of course, the Appeals Council did not "refus[e] to consider [the] new evidence presented to it." Instead, notwithstanding its presumed consideration of that new evidence, the Council concluded that there was no basis for it to vacate, amend, or remand (i.e., "review") the ALJ's disability determination.

22

motion for an order reversing the Commissioner's decision (document no. 7) is granted to the extent claimant seeks a remand. Pursuant to sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner is vacated and the case is remanded for further proceedings consistent with this decision. The Clerk of Court shall close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 15, 2002

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.

23