**Howane J. ORTIZ ROSADO, by his natural mother Evelyn ROSADO GUITIERREZ, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant**

**No. CIV.04–30033–KPN.**

United States District Court,
D. Massachusetts.

Sept. 20, 2004.

Ronald B. Eskin, Law Office of Robert B. Eskin, PC, Lowell, MA, for Howane J. Ortiz Rosado, Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Jo Anne B. Bamhart, Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO AFFIRM (Document Nos. 11 and 14)*

NEIMAN, United States Magistrate Judge.

This is an action for judicial review of an administrative law judge's decision denying Howane Rosado ("Plaintiff"), a juvenile, Supplemental Security Income ("SSI") benefits. Plaintiff asserts that the administrative law judge's decision was unsupported by substantial evidence and that the subsequent decision by the Appeals Council denying review was "egregiously mistaken." Presently before the court is Plaintiff's motion to remand and a corresponding motion by the Commissioner of the Social Security Administration ("Commissioner") to affirm.

With the parties' consent, the matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons indicated below, the court will allow Plaintiff's motion and deny the Commissioner's motion.

### I. STATUTORY AND REGULATORY BACKGROUND

A child under the age of eighteen is deemed disabled, and therefore eligible for SSI benefits, only if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). According to the Commissioner's regulations, this definition may be met if the

child has an impairment listed in appendix 1 of subpart P of part 404 or if his impairment is medically or functionally equivalent to one of those listed. *See* 20 C.F.R. §§ 416.926, 416.926a (2004). "Functional equivalency," requires an evaluation of a child's competency in six domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself and health and physical well being. *See* 20 C.F.R. § 416.926a(b)(1) (2004). Functional equivalency is established when a child's impairments "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a) (2004).

## II. *Background*

Plaintiff, who was born in 1991, has been diagnosed with depression, post traumatic stress disorder, attention deficit disorder, oppositional defiant disorder and hyperactivity. The gang-related shooting death of Plaintiff's elder brother and the severe mugging and later incarceration of his father may have contributed to these conditions. Behavioral and psychological symptoms experienced by Plaintiff include hearing voices, hallucinations, disruptive and violent behavior and suicidal thoughts. As observed by Plaintiff's teachers, psychiatrists and mother, however, these symptoms are more controlled when Plaintiff is medicated.

Plaintiff also has a learning disability which manifests itself in difficulty with comprehension of grade-appropriate material, organization and the expression of ideas. In 2001, due to behavioral and educational problems, Plaintiff's teachers created an individual education plan ("IEP") to deal with his classroom conduct, and Plaintiff received special education for reading and language arts one hour daily.

Plaintiff first applied for SSI benefits in November of 1999. The application was denied and further review was not sought. On December 12, 2000, Plaintiff filed a second application which forms the basis of the instant lawsuit. When the application was denied, Plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on September 12, 2002. Evidence presented at the hearing included testing scores, reports from teachers, Plaintiff's IEP, records from two state psychiatrists (Drs. Joseph Litchman and Orin Blaisdell), his mother's testimony, and records from a long-time treating source at the Mt. Tom Clinic.

On September 27, 2002, the ALJ issued a decision unfavorable to Plaintiff, to wit, that his condition was not the functional equivalent of a listed impairment. In so deciding, the ALJ noted *inter alia* that, other than on a couple of occasions, Plaintiff's mental status examinations and scores were "pretty good." He also relied predominantly on the opinions of Drs. Lichtman and Blaisdell.

Plaintiff appealed the decision to the Appeals Council and offered additional evidence from the Mt. Tom Clinic, including a psychiatric services note dated September 25, 2002, and two assessment forms dated October 23, 2002. On December 11, 2003, the Appeals Council decided that the new evidence did not provide a basis for changing the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.

As it turns out, Plaintiff filed a third application for SSI in October of 2003. That application was approved. What is at issue in the present case, therefore, is Plaintiff's eligibility for SSI benefits from the date of his second application, December 12, 2000, through September of 2003.

## III. DISCUSSION

As indicated, Plaintiff makes two arguments as to why remand is appropriate. First, Plaintiff maintains that the ALJ's decision denying him SSI benefits is not based on substantial evidence. Since a court may review such a decision based "solely on the evidence presented to the ALJ," *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir.2001), the evidence subsequently presented to the Appeals Council cannot be considered with respect to this first argument. Second, Plaintiff asserts that the Appeals Council's decision to deny review, even in light of the additional evidence from the Mt. Tom Clinic, was "egregiously mistaken." *Id.* The court will address Plaintiff's arguments in turn.

### A. *The ALJ's Decision*

 An administrative law judge's decision is conclusive as long as it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is "more than a mere scintilla." *Id.* Thus, even if the administrative record could support multiple conclusions, a court must uphold the administrative law judge's decision "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Services,* 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

 Here, the court believes, the ALJ's decision that Plaintiff's condition was not the functional equivalent of a listed impairment is supported by Drs. Blaisdell and Lichtman. Both doctors found that Plaintiff had no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being. Both also found Plaintiff to be less than markedly limited in the domains of acquiring and using information and attending and completing tasks. In addition, Drs. Blaisdell and Lichtman, respectively, found Plaintiff to have no limitation and a less than marked limitation in interacting and relating to others.

Plaintiff's argument faulting the ALJ's finding that Plaintiff's mental status scores were "pretty good" is not based on an accurate portrayal of the record. To be sure, Plaintiff correctly avers that counselors and psychiatrists had variously noted his psychotic periods, need for individualized instruction, problems adjusting to classroom changes and inability to focus. Plaintiff, however, disregards the improvement in his conditions with medication, which had also been described—if not admitted—by his teachers, psychiatrists and mother. (See Administrative Record ("A.R.") at 191–93, 283–85, 302–08, 311.) Similarly, Plaintiff's relatively low Global Assessment of Functioning ("GAF") score in April of 1999 is irrelevant for purposes here. As described, the only pertinent medical history here falls between October of 2000 and December 12, 2002. In short, a complete view of the record reveals that the opinions of Drs. Blaisdell and Lichtman, upon which the ALJ predominantly relied, were in fact consistent with the record as a whole.

 In addition, the ALJ's credibility determination regarding the testimony of Plaintiff's mother must stand. Considerable deference is owed to an administrative law judge's credibility finding, *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir.1989), and that finding is conclusive if supported by substantial evidence, *see* 42 U.S.C. § 405(g). Granted, a finding of credibility "cannot be based on an intangible or intuitive notion

about an individual's credibility." *See* Social Security Ruling ("SSR") 96–7p, 61 Fed.Reg. 34483, 34485 (July 2, 1996). Moreover, an administrative law judge is required to have considered "the entire case record and give specific reasons for the weight given to the individual's statements." *Id.* And while the ALJ here could have been more explicit in listing the inconsistencies between the testimony of Plaintiff's mother and the record, it is not difficult, as the Commissioner has done, to find those inconsistencies. As examples only, Plaintiff's GAF score of seventy, his involvement with after-school activities, and the fact that his behavior was largely controlled with medication all undermine, to greater or lesser degrees, the testimony of his mother. Accordingly, looking solely at the record before the ALJ, the court believes that there was substantial evidence to support the decision denying benefits.

B. *The Appeals Council's Decision to Deny Review*

 With respect to Plaintiff's second argument, the parties acknowledge that the Appeals Council's discretion in deciding which cases should be reviewed is not absolute. *See Mills,* 244 F.3d at 5. Despite the fact "that an Appeals Council decision refusing review has all the hallmarks of a discretionary decision," the First Circuit has explained, "it has been well established that a discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error." *Id.* (citing *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)). Accordingly, "an Appeals Council's refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." *Id.* Generally, "egregious" is de-

fined as "[e]xtremely or remarkably bad; flagrant." BLACK'S LAW DICTIONARY (7th ed.1999).

The facts in *Mills* are enlightening with respect to the case at bar. There, the Appeals Council articulated relatively explicit grounds for its refusal to review the administrative law judge's decision. In a letter separate from its notice denying review, the Appeals Council explained that additional evidence proffered by the claimant was "consistent" with the evidence of record and " 'thus' did not provide a basis for disturbing the ALJ's decision." *Id.* at 3. This articulation was essential to the court's later ability to measure the Appeals Council's decision against the egregiousness standard.

In the normal course, this court would have to determine whether, under *Mills,* the Appeals Council's rejection of the additional evidence from the Mt. Tom Clinic was egregious. However, the Appeals Council only sent a generic notice to Plaintiff denying review. Granted, the Appeals Council explained in its notice that it would have reviewed Plaintiff's case had he presented "new and material evidence" and had the ALJ's decision been "contrary to the weight of the evidence now in the record." (A.R. at 6.) However, the rationale offered by the Appeals Council for its denial of review was simply that the new evidence did "not provide a basis for changing" the ALJ's decision. (A.R. at 7.) Such broad language, in this court's opinion, falls short of the grounds articulated and analyzed in *Mills.* Thus, the court does not know whether the Appeals Council decreed Plaintiff's evidence not "new," "immaterial," or not "contrary to the weight of" the other evidence. As a result, the egregiousness standard is impossible to apply.[1]

---

1. The court notes that, in her motion to affirm the ALJ's decision, the Commissioner cites, in

Further, even a cursory review of the evidence proffered by Plaintiff to the Appeals Council reveals it was new and material and, perhaps, contrary to the weight of the other evidence. The September 25, 2002 psychiatric services note, for example, describes Plaintiff as loud and disruptive, extremely anxious, hearing voices, jumpy, distractable and restless. It also describes Plaintiff's three "friends" (whom Plaintiff denied were imaginary) who told him what to do. More importantly, the October 23, 2002 assessment provided to the Appeals Council was apparently the first time a treating source indicated that Plaintiff was "markedly" limited in acquiring and using information, interacting and relating to others, caring for himself, and attending and completing tasks, all combined with certain "marked" manifestations of Attention Deficit Hyperactivity Disorder. (A.R. at 316–18.) As described, "functional equivalency" to a listed impairment is established when a child's impairments "result in 'marked' limitations in two domains of functioning." 20 C.F.R. § 416.926a(a) (2004).

Similar circumstances have led at least one court in this circuit to order a remand. *See Orben v. Barnhart,* 208 F.Supp.2d 107, 112, 114–15 (D.N.H.2002). As is the case here, the court in *Orben* was confronted with a somewhat generic explanation by the Appeals Council, i.e., that the new evidence provided "no basis" for changing the ALJ's disability determination. *See id.* at 114 n. 4. Unlike the court in *Orben,*

however, this court is unwilling to treat the Appeals Council's generic notice as a sufficient articulation of reasons for denying review. Even in *Mills*—where the guidance was also somewhat scant—the Appeals Council at least explained in a separate letter to the claimant that the additional evidence was "consistent" with the evidence of record. Moreover, at least one other court has found that a terse statement such as the one at issue here—that the new evidence does not provide a basis for changing the ALJ's decision—fails to offer any articulable grounds which can be reviewed. *See Hawker v. Barnhart,* 235 F.Supp.2d 445, 446 (D.Md.2002) (holding that Appeals Council committed error when it simply "concluded that the 'additional evidence provided no basis for changing the Administrative Law Judge's decision' " and did not accompany the conclusion with "any statement regarding how the additional evidence was evaluated by the Appeals Council and the weight given to these records").

In this court's estimation, if the Appeals Council is going to be afforded a highly protective standard, i.e., egregiousness, by which its decisions are to be reviewed, it must offer something more than a boilerplate justification for its decision. *Cf. Haoud v. Ashcroft,* 350 F.3d 201, 207 (1st Cir.2003) (an administrative agency's reviewing board "has an obligation to … give careful, individualized rational explanations for its decisions, and announce its

passing, *Evangelista v. Sec'y of Health & Human Services,* 826 F.2d 136 (1st Cir.1987). *Evangelista* directs a court to determine whether newly proffered evidence is material and whether a claimant has established good cause for his or her failure to present the evidence in a timely manner to the administrative law judge. *See id.* at 139. *See also* 42 U.S.C. 405(g) (sentence six) (court "may at any time order additional evidence to be taken before the Commissioner of Social Securi-

ty, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). This is a somewhat more forgiving standard than *Mills,* at least as far as claimants are concerned. But *Evangelista* only applies when the new evidence is proffered for the first time to the court, not the Appeals Council. Thus, Plaintiff has had little choice but to proceed here under *Mills.*

decision in terms sufficient to enable a court to determine it heard and thought and not merely reacted") (citations and internal quotations omitted). The Appeals Council is more than able to fulfill this task and requiring it do so is "neither a novel concept nor a burdensome obligation." *Hawker*, 235 F.Supp.2d at 450 (citing *Mills*, among other cases in which the Appeals Council explained its decision to deny review).

To be sure, the Commissioner attempts to undertake that task in her brief, an effort that is appreciated. However, given the lack of articulation by the Appeals Council itself, the Commissioner can only speculate as to why the Appeals Council rejected the newly proffered evidence which it claims to have reviewed. Such speculation is inappropriate and the court, too, must refrain from such guesswork. *See Yatskin v. INS*, 255 F.3d 5, 9 (1st Cir.2001) ("Following administrative law principles a reviewing court should judge the actions of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court."); *De-Loatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). At bottom, the task of articulation is the Appeals Council's at the time it makes its decision, not the Commissioner's *post hoc*, and it is for that reason that this matter needs to be remanded.

### IV. Conclusion

For the reasons stated, the court ALLOWS Plaintiff's motion to remand and DENIES the Commissioner's motion to affirm. The matter is remanded to the Commissioner for further proceedings consistent with this opinion.