Ramos v. SSA                    CV-01-197-JD  04/30/02

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Marino Ramos

    v.                                    Civil No. 01-197-JD
                                            Opinion No. 2001 DNH 084
Jo Anne B. Barnhart,
Commissioner, Social
Security Administration


O R D E R


The plaintiff, Marino Ramos, brings this action pursuant to 42 U.S.C.A. § 405(g) seeking judicial review of the decision by the Commissioner of the Social Security Administration, denying his application for social security benefits under Title II of the Social Security Act.  Ramos contends that the Administrative Law Judge ("ALJ") erred in finding that he could perform his past work of electronics assembly, that his mental impairment was not severe, and that his description of his limitations was not entirely credible.  The Commissioner moves to affirm the decision.

Background

Marino Ramos applied for disability insurance benefits on March 25, 1998, alleging a disability since December 19, 1997, due to pain in his entire body, particularly the knees, ankles, left arm, and low back, and a loss of feeling in his hands and

feet.  He was thirty-seven years old when he filed his application.  His past relevant work included factory assembly work and inspection.

Ramos injured his left knee and ankle in an automobile accident in 1980.  The injuries required multiple reconstructive surgeries, and Ramos continued to have various musculoskeletal complaints thereafter.  He received disability benefits temporarily after the accident.

On March 5, 1998, Ramos reported to Dr. John B. Haggarty, a family practitioner, that he had back and shoulder pain that often radiated between the shoulder and elbow, occasional numbness at the tips of his second and third fingers on his left hand, and ankle swelling after being on his feet.  Dr. Haggarty found a normal range of motion and normal limits in testing except tenderness and limited flexion in the L4-5 area and decreased range of motion in the left ankle.  X-rays showed defects consistent with vertical intervertebral disc herniations, disc space loss at L4-5 and L5-S1.  Dr. Haggarty diagnosed obesity, low back pain possibly caused by a fall, status post knee and ankle surgeries, a possible rotator cuff problem, and possible tissue inflamation in the left upper arm.  At subsequent visits through May, Ramos complained of pain in his left forearm, intermittent right knee pain, diffuse low back pain, pain in his

left thumb and elbow, diffuse muscle pain, and foot and hand numbness.

Ramos saw Dr. George W. Monlux, a physical medicine specialist, on June 1, 1998. Dr. Monlux found that Ramos's pain diagram was "very bizarre." He diagnosed impingement syndrome in the left shoulder, possible C5-6 cervical radiculopathy, degenerative joint disease in the left knee and ankle, and chronic pain syndrome. He recommended medication for depression and pain and physical therapy for the left shoulder and neck. After other tests and examinations, Dr. Monlux commented on August 17, 1998, that Ramos was a complex pain patient with a somatization profile and that he suspected underlying psychiatric problems because of the extremely bizarre pain diagram.[1] Dr. Monlux referred Ramos to Dr. Edmund B. Rowland, a hand surgeon, due to possible carpal tunnel syndrome.

Dr. Rowland saw Ramos on September 16, 1998. He found that Ramos had bizarre symptoms that were "all over the board, not consistent with carpal tunnel syndrome." Tests confirmed a lack of carpal tunnel syndrome. On October 5, 1998, Dr. Monlux stated that there was nothing more he could do for Ramos and that there

---

[1]A somatoform disorder involves symptoms that suggest a physical origin but do not have demonstrated organic causes. See Random House Dictionary of the English Language 1818 (2d ed. 1987).

3

was a psychiatric aspect to his complaints.

Dr. Hoke Shirley, a rheumatologist, saw Ramos on October 12, 1998, because of Ramos's complaints of joint pain. He diagnosed post-traumatic osteoarthrosis (noninflammatory degenerative joint disease) of the left knee and ankle. He found no cause for Ramos's symptoms in his arms. An MRI test showed disc herniations at C5-6 and C6-7.

Ramos next was referred to Dr. Ronald B. Resnick, a foot and ankle surgeon, who examined him on November 2, 1998. He diagnosed left ankle arthrosis and had Ramos wear an ankle-foot orthosis which simulated ankle fusion. Dr. Resnick referred Ramos to Dr. Stephen J. Fox, a reconstructive knee surgeon, who found Ramos's osteoarthritis to be mild, making him not a candidate for surgery. On December 14, 1998, Dr. Resnick noted that Ramos had multiple complaints, and he added a heel lift to the orthosis.

A week later Dr. Monlux reported that Ramos complained of heel pain due to the lift and noted that Ramos's affect and focus were suggestive of somatoform syndrome. He recommended that Ramos attend a pain clinic. Ramos saw Dr. Shirley on January 14, 1999, who noted that Ramos was doing better with anti-inflammatory medication. On January 26, 1999, Dr. Resnick removed the heel lift because of Ramos's complaints.

4

On March 22, 1999, Dr. Monlux noted that Ramos's underlying somatoform disorder made it difficult to treat him and that Ramos was attending a pain management program. Ramos complained of searing pain in his right knee and said he had had a dramatic improvement in his range of motion in his left shoulder after steroid injections. Dr. Monlux referred Ramos to Dr. Andree Claire Phillips for an evaluation of musculoskeletal pain. Dr. Phillips found Ramos's case to be extremely complicated due to the osteoarthritis in his left knee and ankle along with chronic pain syndrome and somatoform disorder.

Ramos was seen by Dr. Fox in May of 1999 for knee pain. Dr. Fox then did a left knee arthroscopy procedure in July. Dr. Fox reported improvement in the medial compartment. He did not feel further surgery was required. He noted that Ramos seemed more concerned with his back.

David Krueger-Andes, Ed.D., did an initial psychosocial assessment of Ramos for purposes of pain management. He found that Ramos had both psychological and medical conditions associated with his pain. He diagnosed chronic pain syndrome and depression disorder with dependent personality traits. Subsequent medical records indicate that Ramos's doctors suggested that he needed to focus on his self-care, should increase physical activity, and needed a practitioner to direct

5

his care.[2]

Ramos had a hearing before an ALJ on July 7, 1999. Ramos appeared at the hearing with a representative. Ramos testified about his limitations, his daily activities, and his past work. A vocational expert testified in response to two hypothetical questions posed by the ALJ. The ALJ described an individual of Ramos's age, education, and experience, who could lift twenty pounds occasionally and ten pounds frequently but could not do repetitive reaching at the shoulder level or above with his left arm and could not do prolonged standing or walking. The vocational expert responded that he could do his prior work in electronics assembly, testing, and inspecting. The vocational expert also found that he could do other work in cashier positions, security positions, truck driving, other types of assembly positions, and manufacturing inspector and checker work.

The ALJ had Ramos evaluated by Francis Warman, Ph.D., a clinical psychologist. Dr. Warman met with Ramos on August 16, 1999. He concluded that Ramos did not meet all of the criteria of a somatization disorder but that he had chronic pain syndrome with both physical and psychological bases.

---

[2]The remaining medical evidence summarized in the joint factual statement was not submitted to the ALJ. Ramos has not suggested that it is the type of evidence that should be reviewed here. See Mills v. Apfel, 244 F.3d 1, 4 (1st Cir. 2001).

The ALJ issued his decision on October 29, 1999. He found that Ramos had severe chronic pain syndrome, including pain in his left knee, ankle, and arm. He found that Ramos's descriptions of his disabling symptoms were not entirely credible due to "the minimal findings of objective lesions to account for the subjective complaints, and the possibility that the claimant is magnifying his symptoms for secondary gain or as a result of some non-severe somatoform disorder." Rec. at 20. He also found that Ramos had a residual functional capacity to lift up to twenty pounds occasionally and ten pounds frequently, that he could not stand or walk for prolonged periods, and could not make repetitive use of his left arm at or above shoulder level. He concluded that Ramos was capable of doing his previous work of electronic assembly and was not disabled. When the Appeals Council denied review, the decision of the ALJ became the final decision of the Commissioner.

## Standard of Review

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive

7

if based on substantial evidence in the record.  See § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted).  In making the disability determination, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## Discussion

Ramos's application was denied at step four of the sequential evaluation process set forth in 20 C.F.R. § 404.1520. At the fourth step, a claimant bears the burden of showing that he is no longer able to perform his previous work because of his impairments.  See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Manso-Pizarro v. Sec. of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  The ALJ must determine whether the claimant's impairment prevents him from performing his past work based on the claimant's residual functional capacity and the demands of the claimant's past work.  See §404.1520(e); 20 C.F.R. § 404.1545(a); see also Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991).

8

Ramos contends that the ALJ erred in determining at step two of the sequential analysis that he did not have a severe mental impairment due to a somatoform disorder. Ramos also challenges the ALJ's finding that his complaints of pain were not entirely credible and that he is capable of doing his past relevant work of electronics assembly. The Commissioner supports the ALJ's findings and moves to affirm the decision.

A.  <u>Severe Mental Impairment</u>

At the second step of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment, meaning an impairment or a combination of impairments that significantly limits his ability to do work activities. 20 C.F.R. § 404.1520(c). The ALJ found that Ramos had severe chronic pain syndrome which affected his left knee, ankle, and arm. He also found that Ramos's "borderline somatoform symptoms" did not cause a significant additional limitation on his ability to function, and therefore, were not severe. Ramos argues that the medical evidence shows that he has a somatoform disorder that is severe, either alone or in combination with his other impairments.

Dr. Warman, a clinical psychologist, evaluated Ramos and concluded that Ramos did not meet all the criteria of a

9

somatoform disorder.  Ramos does not dispute that Dr. Warman was qualified to diagnose his mental impairments.  See 20 C.F.R. § 404.1527(d).  Although Dr. Monlux, a physical medicine specialist, suspected a somatoform disorder because of Ramos's bizarre pain symptoms, he was not qualified to diagnose a mental impairment, and his opinion is entitled to less weight.  See id.

The ALJ appropriately credited Dr. Warman's opinion that Ramos did not have a somatoform disorder.  Therefore, the record supports the ALJ's conclusion that Ramos did not have a severe limitation caused by a somatoform disorder either alone or in combination with his other impairments.

B.  Credibility

An ALJ is required to consider a claimant's allegations about his own impairments, including pain, in making a disability determination.  See 20 C.F.R. § 404.1529(a).  The ALJ must first determine whether the claimant has a "medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, such as pain."  20 C.F.R. § 404.1529(b).  A claimant's "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings."  Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989).  If so, the ALJ must then evaluate the

10

intensity, persistence, and limiting effects of the symptoms, considering the claimant's objective medical evidence along with other evidence, to determine whether the symptoms limit the claimant's capacity for work.  See § 404.1529(c).

"The credibility determination by the ALJ, who observed the claimant, evaluated the demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  Ordinarily, the ALJ's findings are conclusive when supported with substantial evidence.  See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ considered the medical evidence, particularly noting Ramos's automobile accident and subsequent treatment for a variety of symptoms.  He noted that Ramos's treating physician, Dr. Haggarty, had concluded that he suffered from "diffuse myalgias" after diagnostic imaging did not show any spinal or joint lesions that would cause his alleged symptoms.  The ALJ also noted that "[v]arious consulting physicians have been at a loss to find a definitive diagnosis for Mr. Ramos' multiple complaints."

Indeed, Ramos's medical record is replete with reports by his physicians that his alleged symptoms were not related to his

11

physical condition.  For example, Dr. Monlux noted that Ramos's pain diagram was "very bizarre," and Dr. Rowland found that Ramos thought his hand problem was much more significant than his condition suggested and noted symptoms that were "all over the board" and bizarre.  Dr. Shirley found no medical causes for Ramos's pain other than in his knee and ankle, and Dr. Phillips found Ramos's case to be extremely complicated because of his allegations of pain that did not fit his diagnosis.

Therefore, Ramos did not show that he suffers from a medically determinable impairment that could reasonably be expected to cause all of his alleged symptoms.  The ALJ appropriately credited the symptoms associated with his diagnosed chronic pain syndrome in his left knee, ankle, and arm.

C.  Ability to Do Prior Work

The ALJ determined that Ramos retained the ability to lift and carry up to twenty pounds occasionally and ten pounds frequently, except that he could not do work requiring prolonged standing or walking or repetitive use of his left arm above the shoulder.  Based upon the vocational expert's testimony, the ALJ found that Ramos could do his prior work in electronics assembly. Ramos contests that finding on a variety of grounds.

12

1.  The residual functional capacity assessment.

Ramos argues that the ALJ's residual functional capacity assessment, which was the basis for his hypothetical question to the vocational expert, improperly included only a limitation on repetitive use of his left arm at or above shoulder level. He states that the assessment done by Dr. Nault, the state agency doctor, precluded reaching in all directions.

The page of the record cited by Ramos in support of that finding, however, does not address Ramos's ability to reach at all. On another page, Dr. Nault indicates that Ramos's ability to reach is limited in that he should avoid repetitive overhead reaching with his left arm. Dr. Nault reiterated his finding that Ramos should avoid repetitive overhead reaching with his left arm later in his report, but did not indicate that Ramos was limited from all reaching. Therefore, the record does not support Ramos's version of Dr. Nault's assessment.

2.  The state agency determination.

Ramos contends that the ALJ's decision that he could return to his prior work is in error because the state agency previously found that he could not do any of his prior work. The ALJ based his determination on the vocational expert's opinion. At the hearing, the ALJ posed a hypothetical that accurately described

13

Ramos's functional capacity and limitations. The vocational expert responded that Ramos could do his past work in electronics assembly and inspection. As long as the vocational expert's opinion is based upon an accurate assessment of the claimant's abilities, her opinion constitutes relevant evidence. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). The ALJ is entitled to resolve conflicts in the evidence. See Irlanda Ortiz, 955 F.2d at 769.

3. Prior work.

The ALJ found that Ramos's limitations did not prevent him from returning to his past relevant work as an electronics assembler. Ramos argues in a footnote that his prior work as an electronics assembler was an unsuccessful work attempt and not past relevant work. He also contends that his prior work in electronics inspection and testing in 1983 and 1984 was not at the light exertional level.

It appears that the vocational expert and the ALJ considered Ramos's last job as an electronics assembler, which he held between October and December of 1997, as past relevant work. To be considered past relevant work, a job must have been substantial gainful activity. See Vincent v. Apfel, 264 F.3d 767, 769 (8th Cir. 2001). The primary consideration in

14

determining whether work was substantial gainful activity is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1). Earnings from an unsuccessful work attempt, a job which the claimant is forced to stop after a short time due to his impairment, are not considered as constituting a substantial gainful activity. Id.; see also Gatliff v. Comm'r of Soc. Sec. Admin., 172 F.3d 690, 694 (9th Cir. 1999); Driskell v. Barnhart, 182 F. Supp. 2d 803, 806-07 (S.D. Iowa 2002).

Apparently, Ramos held the electronics assembly job for less than three months, which would suggest an unsuccessful work attempt if he had been forced to stop due to his impairment. See SSR 84-25. Ramos has not shown, however, that he was forced to leave that job because of an impairment. Instead, he testified that he was able to do the job and that he did not know anything was wrong until he was fired. Despite the short duration of the job, because Ramos has not shown that he was forced to leave due to an impairment, he has not shown that the electronics assembly job was not past relevant work.

The vocational expert also testified that Ramos could return to his prior work as an electronics tester or inspector. Ramos contends that the electronics inspector job that he held in 1983 and 1984, testing small transformers, required heavy lifting. The referenced part of the record, however, shows that the tester

15

job only required him to carry weight up to five pounds. Ramos did not designate any weight in the heaviest weight lifted section of the form. Since the weights listed in that section began with ten pounds, above the weight required five pounds required in the job, his failure to indicate a weight does not suggest that he intended to include all of the listed weights. Therefore, the record does not support Ramos's argument that the tester job required heavy lifting.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied. The Commissioner's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 30, 2002

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire

16