**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

---

No. 04-1490

JERRY L. ACOSTA,

Plaintiff, Appellant,

v.

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. J. Antonio Castellanos, U.S. Magistrate Judge]

---

Before

Selya, Lynch and Lipez,
Circuit Judges.

---

Salvador Medina de la Cruz on brief for appellant.
H.S. Garcia, United States Attorney, Lisa E. Bhatia, Assistant
U.S. Attorney, and Robert J. Triba, Regional Chief Counsel, Social
Security Administration, on brief for appellee.

---

November 12, 2004

---

**Per Curiam**.  Claimant Jerry L. Acosta appeals from the district court's judgment affirming the denial of Social Security benefits.[1]  The Commissioner of Social Security found that claimant suffered from the following severe impairments (or combination of impairments): herniated disc, high blood pressure, and adjustment disorder.  In denying benefits, the Commissioner first determined that although claimant could not return to his past work as a truck driver and ship unloader (medium, semi-skilled), claimant nonetheless had the residual functional capacity ("RFC") to perform light, unskilled work.  Then, using the Medical Vocational Guidelines (the "Grid"), 20 C.F.R. Part 404, Subpart P, App.2, as a framework, the Commissioner concluded that claimant was not disabled.

On appeal, claimant argues that the administrative law judge (ALJ) 1) failed adequately to consider his allegations of pain in assessing his RFC, and 2) erred in relying on the Grid rather than obtaining the testimony of a vocational expert  because claimant's nonexertional limitations (caused by pain and an adjustment disorder) significantly eroded the occupational base at the relevant exertional level.

I.   Consideration of Pain in Assessing RFC

The ALJ found that claimant had a medical condition -

---

[1]  Upon consent of the parties, the case was referred to a magistrate judge for all proceedings and judgment. See 28 U.S.C. § 636(c).

herniated disc at L4-L5 and L5-S1 - that reasonably could be expected to cause some discomfort and pain, but not to the extent alleged. In reaching that conclusion, the ALJ relied upon examining physicians' records of claimant's medical condition, including claimant's descriptions of the location and intensity of his pain. Claimant waived his right to appear at the hearing before the ALJ, which would have provided an opportunity for claimant to explain and demonstrate the functional impact of his pain. Two RFCs were prepared, one by an examining physician and the other by a non-examining physician, both of which noted that they had taken claimant's allegations of pain into account. The ALJ's approach was consistent with the policy described in Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986).

The only specific exertional limitation that claimant identifies as support for the argument that his pain precluded him from performing the full range of light work is an inability to lift/carry more than 10 pounds, even occasionally.[2] Even if

---

[2] Limitations of functions are classified as exertional or nonexertional. See 20 C.F.R. § 404.1569a. Impairments, including pain, can cause exertional and/or nonexertional limitations of functions. Id. Exertional limitations are those that affect a claimant's "ability to meet strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." Id. Nonexertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands." Id. Examples of non-strength demands of jobs are the ability to concentrate, or to perform "the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." Id.

claimant's pain so limited him, however, the Grid would still dictate a finding of not disabled. The Commissioner found that claimant was not disabled based on section 202.18 of the Grid, involving the subsidiary finding that claimant could perform light work (involving occasional lifting/carrying of up to 20 pounds). If the capacity to perform sedentary work (involving the lifting/carrying of no more than 10 pounds) is substituted for the capacity to perform light work, section 201.19 of the Grid would apply and would also direct a finding that claimant is not disabled. Either way, substantial evidence sustains the ALJ's determination of not disabled under the Grid. See Gordils v. Sec'y of HHS, 921 F.2d 327 (1st Cir. 1990).

II. Impact of Nonexertional Limitations on Occupational Base

Claimant's main argument on appeal is that the ALJ erred in relying exclusively on the Grid to determine whether there were a significant number of jobs in the national economy that he could perform. "The Grid is based on a claimant's exertional capacity and can only be applied when claimant's nonexertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994). "If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." Ortiz v. Sec'y of

HHS, 890 F.2d 520, 524 (1st Cir. 1989).

A. Pain

"Pain may be a nonexertional factor to be considered in combination with exertional limitations as well as a separate or independent ground for disability." Gagnon v. Sec'y of HHS, 666 F.2d 662, 666 n.8 (1st Cir. 1981). Claimant suggests that limitations in his postural and manipulative functions (specifically, bending and reaching) caused by his pain symptoms significantly eroded the relevant occupational base. Substantial evidence supports the ALJ's determination that claimant's pain did not amount to a significant nonexertional impairment.[3]

The two RFCs reached different conclusions regarding how the medical findings translated into functional nonexertional limitations. The RFC prepared by the non-examining physician ("non-examining RFC") reported that claimant could stoop "occasionally," and that there were no limitations in claimant's reaching ability. The other RFC, prepared by an examining physician ("examining RFC"), reported that claimant could "never" stoop and that he could reach only "occasionally."

"A bending restriction . . . constitutes a distinct nonexertional limitation." Ortiz, 890 F.2d at 525. The

_____

[3] In reaching this conclusion, we have not considered the medical report of treating physician Dr. Pagán, which was submitted to the Appeals Council, but not the ALJ. We "may review the ALJ decision solely on the evidence presented to the ALJ." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).

Commissioner has stated that "[i]f a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact." Social Security Ruling 85-15, 1985 WL 56857, *7. Reaching is an activity "required in almost all jobs. Significant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do." Id.

The non-examining RFC was based on a review of the medical evidence and took claimant's allegations of pain into account. Its conclusion that claimant could bend "occasionally" is not inconsistent with the examining physicians' findings that he could bend forward only 30 or 45 degrees. See Ortiz, 890 F.2d at 525 (upholding an ALJ's finding that Ortiz's bending restriction did not significantly reduce his potential occupational base where bending range was limited to 30 to 40 degrees and RFC indicated that Ortiz was capable of "occasional" bending). The non-examining RFC's conclusion that claimant's reaching ability was not limited is supported by Dr. Babilonia's examination report, which indicated that claimant's joint movements in his shoulders were normal, that there was no significant inflammation or swelling of the joints, and that (other than in the dorsal spine area) his joints were normal.

The examining RFC noted that its assessments were based on the "patient's own reports" that certain activities exacerbated his symptoms. Therefore, the ALJ was justified in giving less weight

to that RFC. See 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will we give that opinion."). Although the two RFCs were inconsistent in certain respects, the medical evidence was largely consistent. Both consulting physicians found that claimant's ability to bend was limited (varying only from 30 degrees to 40 degrees). Conflicts in the evidence regarding the range of motion in claimant's left shoulder were for the Commissioner to resolve. See Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987).

We conclude that there is substantial evidence to support findings (i) that claimant was capable of at least occasional bending, and (ii) that his reaching abilities were not significantly limited by his pain. Therefore, there was substantial evidence to support the Commissioner's decision that these nonexertional limitations did not so significantly erode the occupational base as to require the testimony of a vocational expert.

B. Adjustment Disorder

The issue concerning claimant's mental impairment is governed by our decision in Ortiz, in which we approved the use of the Grid in circumstances similar to the present case. There, we held that exclusive reliance upon the Grid is appropriate so long as the claimant's mental impairment does not "interfere more than

marginally with the performance of the full range of unskilled work." Ortiz, 890 F.2d at 526.  This determination involves the following two lines of inquiry: "1) whether a claimant can perform close to the full range of unskilled work, and 2) whether he can conform to the demands of a work setting, regardless of the skill level involved." Id.  The Commissioner has described the mental demands of unskilled work as follows:

> the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, 1985 WL 56857, at *4.  Conforming to the demands of a work setting involve "getting to work regularly . . . and remaining in the workplace for a full day." Id. at *6.

There is substantial evidence to support the ALJ's findings that claimant was "alert, coherent, relevant, logical and oriented in the three spheres," able to understand and carry out instructions, had sustained attention and concentration, and could complete a normal work day and work week without undue interruptions.  The only contrary evidence is the treating health center's report of "diminished" attention and concentration. However, the examining psychiatrist concluded that claimant's concentration was "intact."  "[R]esolution of such conflicts in the evidence is for the [Commissioner]." Rodriguez Pagan, 819 F.2d at 3.  Although the examining psychiatrist did not complete a mental

-8-

RFC form, that failure did not preclude the Commissioner "from rendering common-sense judgments about functional capacity based on medical findings." Gordils, 921 F.2d at 329. On these facts, substantial evidence supports the conclusion that claimant's mental impairment does not "interfere more than marginally with the performance of the full range of unskilled work." Ortiz, 890 F.2d at 526.

Based on the foregoing, and according the appropriate deference to the Commissioner's decision, we find no error in the ALJ's treatment of claimant's subjective complaints of pain. The ALJ partially credited claimant's allegations of pain and discomfort related to his herniated disc, and determined that he could perform only light work. There is substantial evidence in the record to support the Commissioner's decision that nonexertional limitations imposed by claimant's pain and mental condition did not so significantly erode the occupational base that testimony of a vocational expert was required. Consequently, the judgment of the district court is affirmed.