Think about that cost.

I do.

**Robert A. ANDERSON, Plaintiff,**

**v.**

**Michael J. ASTRUE, as Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 08–11146–NMG.**

United States District Court, D. Massachusetts.

Feb. 1, 2010.

Sonya A. Rao, United States Attorney's, Boston, MA, for Defendant.

Carol R. Schafer, South Coastal County Legal Services, Inc., Hyannis, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District judge.

Plaintiff Robert Anderson ("Anderson") brings this action against Defendant Michael Astrue ("Astrue"), in his official capacity as Commissioner of the Social Security Administration ("SSA"), seeking judicial review of his denial of disability benefits. Plaintiff claims that he is entitled to a finding of disability due to a combination of various physical and mental impairments that prevent him from engaging in any form of substantial gainful activity.

### I. *Background*

The evidence in the record may be summarized as follows: Plaintiff is a 44–year–old man with a tenth grade education. He has never been married and currently resides in a mobile home with his mother who helps look after him. Plaintiff was sexually abused as a child and claims to have suffered from a variety of mental illnesses, including major depression, anxiety disorder, bi-polar disorder, obsessive-compulsive disorder ("OCD") and post-traumatic stress disorder ("PTSD"). In 1990, Plaintiff sustained a sports-related injury in which he fractured his left femur and injured his hip. He underwent surgery and, despite continuing discomfort, managed to work successfully for over a decade thereafter, mostly as a landscaper.

In 2003, however, he began to experience increasing pain in his hip and left leg as well as heightened emotional instability. Finding that he was no longer able to carry out the physical functions required for his job, he stopped working and sought disability benefits from the SSA. His request was denied. In 2004, Plaintiff sought treatment from Dr. Douglas Grogan ("Dr. Grogan"), complaining of recurring leg pain as well as chronic anxiety and depression. An x-ray revealed that his femoral fracture was "well-healed" and Dr. Grogan prescribed percocet to help alleviate his pain. Plaintiff, however, became dependent on the percocet and was then provided with methadone for his dependence and referred to counseling.

Still complaining of leg pain, depression, insomnia and anxiety, Plaintiff sought further treatment from another doctor, David Cunningham ("Dr. Cunningham"). Dr. Cunningham diagnosed Plaintiff with severe anxiety but could not detect the cause of his leg pain or limp and refused to prescribe him any pain medications because of his history of dependence and refusal to provide requested medical records. In January of 2006, Plaintiff began regular sessions with Paul Zeilinski ("Zeilinski"), a licensed clinical social worker, who diagnosed him with OCD and assessed his Global Assessment of Functioning ("GAF") at 58 (out of 100).

## A. Procedural History

Plaintiff's initial applications for Supplemental Social Security Income ("SSI") and Social Security Disability Insurance were denied in February, 2005, and again upon reconsideration in June of that same year. Plaintiff then requested a hearing before Administration Law Judge ("ALJ") Stephen Fulton, who, after applying the "five-step sequential evaluation process," affirmed the SSA's denial of benefits in a decision dated December 8, 2006.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2003, the date of onset of his alleged injury. At step two, he found that Plaintiff had severe mental and physical impairments but found at step three that those impairments did not meet or equal one of the qualifying "listings". At step four, the ALJ found that Plaintiff's Residual Function Capacity ("RFC") was insufficient to permit him to return to his past work but found at step five that he was capable of performing other work that existed in significant numbers in the national economy.

After the Appeals Council denied review of the ALJ's decision in May, 2008, Plaintiff filed a timely complaint in this Court. Because the Appeals Council's denial renders the ALJ's decision the "final decision of the Commissioner," the matter is ripe for review under 42 U.S.C. § 405(g).

## II. Legal Analysis

### A. Legal Standard

Section 205(g) of the Social Security Act (the "Act") gives federal district courts

> power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Act provides, however, that the findings of the Commissioner are conclusive so long as 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. *See id.*; *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir.2001).

Accordingly, as long as the Commissioner applied the correct standard and his decision is supported by substantial evidence, the Court must uphold it, even if the record could justify a different conclusion. *Evangelista v. Sec'y of Health and Human Services*, 826 F.2d 136, 144 (1st Cir.1987). In reviewing the record for substantial evidence, the Court is mindful that issues of credibility, resolution of conflicts in the evidence and determination of the ultimate question of disability are reserved for the Commissioner. *Rodriguez v. Sec'y of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). The Court must uphold the Secretary's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id.*

### B. Application

Plaintiff contends that the Commissioner erred in his determination that Plaintiff is not disabled and that, despite his impairments, he is capable of performing light work. Accordingly, Plaintiff requests that the Court reverse the Commissioner's decision or, in the alternative, remand it to the ALJ. Defendant, on the other hand, moves the Court to enter an order affirming the Commissioner's decision on the

---

1. The sequential evaluation process is a series of five "steps" that ALJs follow in order to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

grounds that it is supported by substantial evidence.

The specific issues before the Court are: 1) whether substantial evidence supports the ALJ's determination that Plaintiff's impairments did not automatically qualify him as disabled, 2) whether substantial evidence supports the ALJ's RFC assessment with respect to Plaintiff's mental impairments, 3) whether substantial evidence supports the ALJ's decision that Plaintiff is not disabled and 4) whether the Appeals Council appropriately denied review.

### 1. ALJ's Finding that Plaintiff Did Not Warrant a "Qualifying Listing"

■ Under step three of the sequential evaluation process, a finding that the claimant suffers from one of the listed impairments in the social security regulations results in an automatic finding of disability. *See* 20 C.F.R. § 416.920(d). The burden is on Plaintiff, however, to produce evidence that he satisfies the criteria for a particular "listed" condition. *Mills v. Apfel,* 244 F.3d 1, 6 (1st Cir.2001). Plaintiff contends that, although the ALJ conceded at step two that Plaintiff's physical and mental health impairments were "severe," he erred at step three in finding that they did not meet or equal the listings governing affective disorders or anxiety disorders.

In order to satisfy the listing governing affective disorders, Plaintiff must demonstrate 1) the medically documented persistence of a number of different depressive-disorder related symptoms that 2) results in marked limitations in at least two out of

four different categories. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.04(A), (B).

■ With respect to the first requirement, Plaintiff claims that the ALJ erred in failing to consider his various mental health ailments, including his reported episodes of anger outbursts, anxiety, panic attacks, depression and insomnia. With the exception of insomnia, however, none of the symptoms of which plaintiff complains is specifically enumerated as a qualifying symptom under § 12.04(A). With respect to the second requirement, although perhaps a closer call, Plaintiff does appear to have met his burden of proving marked limitation in two of the four enumerated categories. The ALJ found that Plaintiff suffered only a *mild* limitation with respect to performing activities of daily living and *moderate* difficulties in maintaining social functioning, concentration, persistence or pace.[2] Because the ALJ's conclusions were based on the opinions of two medical experts, they were supported by substantial evidence.

Plaintiff also contends that the ALJ erred in concluding that he did not meet the listing governing anxiety related disorders. Under that listing, Plaintiff must demonstrate medically documented findings of 1) generalized persistent anxiety accompanied by multiple enumerated symptoms and 2) a persistent irrational fear of a specific object or situation or 3) recurrent severe panic attacks 4) resulting in marked limitation in at least two of four different categories (the same categories listed in § 12.04). *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.06(A), (B).[3] As dis-

---

2. In order to meet the requirements listed in 12.04(B), Plaintiff's restrictions of daily activities and his difficulties in social functioning as well as maintaining concentration, persistence or pace have to be *marked.* A restriction that is only *moderate* or *mild* does not suffice.

3. Section 12.06(A) also lists two other qualifying symptoms that a claimant may demonstrate to prove he meets the listing for anxiety-related disorders but neither appear to apply to Plaintiff.

cussed above, Plaintiff did not adequately demonstrate any marked limitation in two of the four enumerated categories. Therefore, the ALJ's decision that Plaintiff did not meet or equal the criteria listed in § 12.06 was supported by substantial evidence.

## 2. ALJ's Residual Functional Capacity ("RFC") Assessment

■■■ A claimant's RFC represents "the most [the claimant] can do despite [any physical and mental] limitations" that affect "what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In making an RFC assessment, the ALJ is entitled to render "commonsense judgments about functional capacity based on medical findings, so long as [he] does not overstep the boundaries of a lay person's competence and render medical judgments." *Gordils v. Sec'y of Health of Human Services,* 921 F.2d 327, 329 (1st. Cir.1990). Here, Plaintiff claims that the ALJ erred in his RFC assessment because 1) he did not fully consider the impact of Plaintiff's mental impairments, in particular his OCD, on his ability to hold a job and 2) he erroneously found that Plaintiff could perform a full range of light work.

Plaintiff's first contention, i.e., that the ALJ did not consider the impact of his mental impairments, is without merit. Specifically, Plaintiff argues that the ALJ didn't adequately account for his limitations in social functioning and difficulties in maintaining concentration, persistence and pace with respect to his ability to sustain a job. The record, however, indicates the contrary. In making his RFC assessment, the ALJ expressly acknowledged that Plaintiff had moderate difficulties in social functioning and concentration, persistence and pace but concluded nonetheless that, despite those restrictions, he was able to understand and remember simple instructions, concentrate on simple tasks and interact appropriately with co-workers. With respect to Plaintiff's alleged OCD, the ALJ noted that, although Plaintiff claimed to have suffered from OCD-related symptoms for ten years, he had no correlative treatment history for that period. Moreover, the ALJ found that, despite Plaintiff's numerous mental impairments, his own mental health care providers assessed him a GAF consistent with the ability to hold a job.

Plaintiff also faults the ALJ for finding that he could perform a full range of light work or unskilled sedentary work. Contrary to Plaintiff's assertions, the ALJ took into consideration Plaintiff's physical restrictions, including his inability to walk or stand for more than two hours or to climb, crouch, balance, stoop, kneel or crawl on a more than occasional basis. Relying on testimony from a vocational expert, the ALJ concluded that despite those limitations, Plaintiff could still perform light work. The Social Security Act expressly allows (and indeed encourages) the use of vocational experts to determine whether a claimant is disabled or can perform certain functions. *See* 20 C.F.R. § 404.1566(e). Accordingly, the ALJ's conclusion was supported by substantial evidence.

## 3. ALJ's Disability Determination

Plaintiff next asserts that the ALJ's conclusion that he is not disabled is contrary to the substantial weight of the evidence. Plaintiff makes four arguments in support of that contention.

■■■ First, he claims that the ALJ erred in rejecting the medical report of his primary care physician, Dr. Grogan. Plaintiff argues that, under the relevant regulations, Dr. Grogan is a "treating source" because he provided Plaintiff with ongoing medical treatment and, accordingly, his opinion must be given controlling weight.

See 20 C.F.R. § 404.1502 (defining "treating source" physician); § 404.1527 (explaining criteria for weighing medical opinions).

As Defendant points out, however, Plaintiff's premise (that Dr. Grogan's report was entitled to "treating source" status) is mistaken. Although Dr. Grogan *eventually* forged an "ongoing relationship" with plaintiff, he did not qualify as a "treating source" when he issued his December 1, 2004, report because, at that time, he had evaluated the plaintiff on only *one* occasion. *See* 20 C.F.R. § 404.1502. Apparently, Dr. Grogan never issued an updated opinion and his later notes appear to undermine his prior conclusions.

Moreover, a treating source's opinion is given controlling weight only if it is well-supported and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527. Accordingly, even if Dr. Grogan had been a treating source at the time he issued his December, 2004, report, the ALJ's decision to accord that report minimal weight was appropriate because it was inconsistent with Dr. Grogan's own treatment records and the record as a whole.

Second, Plaintiff contends that the ALJ erred in failing to re-contact Dr. Grogan to ask for a follow-up opinion. Under certain circumstances, the ALJ may be required to re-contact a treating physician to seek additional evidence or clarification when his report contains a conflict or ambiguity that must be resolved. *See* 20 C.F.R. § 404.1512(e)(1); § 404.1527(c)(3). If, however, the record evidence suffices to resolve the claim, the ALJ is under no obligation to re-contact the treating physician. *See, e.g., Shaw v. Sec'y of Health and Human Services,* 25 F.3d 1037, 1994 WL 251000 at *5 (1st Cir. June 9, 1994) (per curiam) (finding that ALJ did not err in failing to re-contact claimant's treating physician when the record supplied an adequate evidentiary basis for his decision and claimant had not indicated a desire to offer any further evidence herself); *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir.2007) (noting that the re-contacting of a treating physician is required only if the evidence is inadequate to determine disability). Accordingly, the ALJ's decision not to re-contact Dr. Grogan does not constitute reversible error.

Third, Plaintiff criticizes the ALJ's rejection of the opinion of his clinical social worker Paul Zielinski. He claims that although Zielinski is not doctor, his opinion should have been given significant weight based on his relevant experience, area of specialty and the number and frequency of his visits with the plaintiff. As Plaintiff concedes, however, under the applicable regulations, Zielinski cannot be considered a "medical source" but is instead an "other source." Accordingly, the ALJ's use of his testimony or the weight he assigned thereto was entirely discretionary. *Compare* 20 C.F.R. § 404.1513(a)(1)-(5) (listing acceptable "medical sources") *with* § 404.1513(d) (describing "other sources" and their use). Given that 1) the ALJ was not required to consider Zielinski's opinion and 2) the ALJ found that Zielinski's report was inconsistent with the record as a whole, the ALJ's failure to accord it significant weight was reasonable under the circumstances.

Finally, Plaintiff challenges the ALJ's failure to provide a specific rationale for discrediting Plaintiff's testimony. A fact-finder's assessment of a party's credibility, however, is given considerable deference and, accordingly, a reviewing court will rarely disturb it. *See, e.g., Ortiz v. Sec'y of Health and Human Services,* 955 F.2d 765, 769 (1st Cir.1991) (noting that it is the responsibility of the Secretary, not

the reviewing court, to determine issues of credibility).

 In assessing a claimant's symptoms, an ALJ must consider all of the claimant's statements about his symptoms, including his subjective allegations of pain and its effect on his daily life and ability to work. 20 C.F.R. § 404.1529(a). However, a claimant's own statements about his pain are not alone conclusive evidence of disability; there must also be medical evidence of an impairment that could reasonably be expected to produce the alleged pain or other symptoms. *Id.*; *see Avery v. Sec'y of Health and Human Services*, 797 F.2d 19, 21 (1st Cir.1986). Although the ALJ must make some "specific findings as to the relevant evidence he considered in determining to disbelieve [a claimant]," *Da Rosa v. Sec'y of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986) (per curiam), he need not march through every single step in his reasoning. *Gordils*, 921 F.2d at 330.

 challenges the ALJ's decision to discount his testimony concerning the allegations of pain in his left leg and back on the grounds that a "doctor could not see a reason why he was having the discomfort he complained of." The regulations, however, plainly require that the claimant demonstrate a medically determinable ailment that would give rise to those symptoms in order to obtain benefits. 20 C.F.R. § 404.1529(a). Here, Plaintiff underwent multiple x-rays and bone scans as well as a physical examination, none of which yielded any medical evidence of an abnormality that could explain his pain. The ALJ was fully entitled to rely on the medical imaging procedures and corresponding doctors' reports in making his credibility determination and denying benefits.

Moreover, the ALJ did not reject Plaintiff's allegations regarding the intensity and persistence of his pain *solely* because they were not substantiated by available objective medical evidence. In addition to the marked inconsistencies between the medical record and Plaintiff's allegations of pain, the ALJ articulated other ample reasons to doubt Plaintiff's credibility, including his failure to comply with treatment, the lack of support for his allegations of long-standing mental illness, the substantial gap in treatment for his physical injuries and his narcotic addiction. Accordingly, the ALJ's credibility determination was supported by the evidence in the record and will not be disturbed by this Court.

### 4. Denial of Review by the Appeals Council

 Finally, Plaintiff asserts that the Appeals Council erroneously denied review of the ALJ's decision, refusing to consider the new evidence Plaintiff presented to them. To prevail on that claim, however, Plaintiff faces an uphill battle. The Appeals Council has a "great deal of latitude" in deciding which cases to review and, accordingly, its decision is only reviewable to the extent that it rests on "an explicit mistake of law or other egregious error." *Mills*, 244 F.3d at 5.

 Here, the Appeals Council was not "egregiously mistaken" in finding that the three new reports submitted by Plaintiff, all dated after the ALJ's decision, did not "affect the decision about whether [he] was disabled beginning on or before December 8, 2006" (the date of the ALJ's decision). Pursuant to 20 C.F.R. § 416.1470,

> if new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only* where it relates to the period *on or before* the date of the administrative law judge hearing decision.

(emphasis added). Plaintiff claims that, although the reports he submitted were

*dated* after the ALJ's decision, they were *related to* the time period for which he sought benefits.

To Plaintiff's credit, the reports, although based on medical evaluations that occurred subsequent to the ALJ's decision, do discuss events that occurred beforehand (e.g., plaintiff's femur fracture in 1990, his history of panic attacks and his childhood depression) and would have been relevant to the ALJ's disability determination. Thus, the language in the Appellate Council's statement that the "new information was about a later time" was not altogether apt. Nonetheless, the reports were not purported to be retrospective in nature nor do they add anything new and material to the evidence that was presented to the ALJ. Accordingly, the Appeals Council's assessment, though perhaps over-simplified, was entirely reasonable and, as such, it is not reviewable by this Court. *See Mills*, 244 F.3d at 5–7 (holding that Appeals Council's assessment was entitled to great deference and that its slight overstatement in describing claimant's new evidence did not constitute an egregious error or undermine its refusal to review ALJ's decision).

### ORDER

In accordance with the foregoing, Defendants' Motion for Order Affirming Decision of Commissioner (Docket No. 20) is **ALLOWED**.

**So ordered.**