**Cathy Marie MacNEIL, Plaintiff,**

**v.**

**Michael ASTRUE, Defendant.**

**Civil Action No. 11–10951–NMG.**

United States District Court,
D. Massachusetts.

Aug. 8, 2012.

---

Bruce S. Lipsey, Epstein, Lipsey & Clifford, P.C., Hanover, MA, for Plaintiff.

Rayford A. Farquhar, United States Attorney's Office, Boston, MA, for Defendant.

Thomas D. Ramsey, Office of the General Counsel, Boston, MA, for Interested Party.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Cathy Marie MacNeil ("MacNeil") seeks judicial review of the denial of her application for disability benefits by the defendant, Michael J. Astrue ("the Commissioner"), in his official capacity as Commissioner of the Social Security Administration ("SSA"). Before the Court is the defendant's motion for an order affirming the decision of the Commissioner.

## I. *Background*

MacNeil is a 41–year–old woman with a high school education. She has suffered from severe low back pain for years, which worsened significantly in January, 2008 when she fell off the back of a U–Haul truck onto a stone driveway. In March, 2008, she left her job as a cashier due to the pain.

In June, 2008, MacNeil underwent an MRI of her lumbar and thoracic spine which revealed, respectively, 1) a compression fracture of the L1 vertebra, degenerative disc changes at the L4–L5 and L5–S1 levels and a disc bulge which mildly extended into the bilateral neural foramina and 2) thoracic spondylosis with mild disc bulges at T2–T3 and T3–T4 as well as moderate disc bulges at T5–T6 with no significant spinal canal stenosis.

Shortly thereafter, Dr. Gigi Girgis examined MacNeil and found her to have mild tenderness of the sciatic notches and S1 joints bilaterally, reduced reflexes and an antalgic gait but no muscle atrophy and 5/5 motor strength.[1]

MacNeil received epidural steroid injections but continued to experience pain. In September, 2008, she underwent vertebroplasty at the L1 level and, one month later, reported that she was very happy with the outcome and had virtually no pain in that area, although she continued to have pain in her lower back at a level of between 3 and 5 on a scale of 1 to 10.

More than a year later, in October, 2009, Dr. Carol A. Wakefield examined MacNeil. She observed that MacNeil experienced tenderness to palpation, a positive straight-leg test to 30 degrees bilaterally with radiation of pain into the knees but that her motor strength was 5/5 in her arms and legs and her sensation was intact. An MRI in November, 2009 revealed multilevel degenerative changes of the thoracolumbar spine without significant narrowing of the spinal canal or neural foramen at any level.

In April, 2010, MacNeil was examined by Dr. Kevin McGuire. He determined that her November, 2009 MRI showed evidence of her previous compression fracture and vertebroplasty, and other evidence of lumbar spondylosis at multiple levels, but no new fractures or significant foraminal stenosis. He noted that MacNeil had good motor strength, 4/5, in her arms and legs, no hyperflexion and no loss of reflexes. He decided that she was not a candidate for surgical intervention and recommended aquatic therapy and significant weight loss.

---

**1.** *See* 20 C.F.R. Part 404, Subpart P, App. 1, 1.00E1 (explaining that muscle strength should be assessed using a scale of 0 to 5 with 5 being maximum strength).

In July, 2010, Nurse Practitioner Casey Fryer completed a "Physical Capacities Evaluation" finding that MacNeil was only able to sit for fifteen minutes at one time and for a total of fifteen minutes during the course of an eight-hour day. Fryer's answers to a questionnaire also indicated that MacNeil 1) could lift up to ten pounds frequently but could never carry more than five pounds, 2) could occasionally squat but could not bend. Finally, Ms. Fryer remarked that MacNeil suffered significant joint/osteo disease or lumbo-sacral and associated radiculopathy.

In July, 2010, Dr. Anne Marie Forth, MacNeil's primary care physician, submitted a summary statement regarding MacNeil's overall condition. She noted that MacNeil had consistently reported significant limitation in her physical capacity due to back pain and subsequent radiculopathy which required frequent position changes. Dr. Forth stated that the pain was chronic and that rehabilitative treatment programs and sub-specialty consultations had proven unsuccessful. She also remarked that MacNeil's "MRI is remarkable, indicating multiple disc protrusions and bulging, nerve root compression, degenerative changes and compression fracture", although she did not specify to which MRI she referred. She stated that her progress notes and follow-up office visits would not reflect the reported physical limitations because, as primary care physician, she had focused on coordinating MacNeil's sub-specialty visits and monitoring her symptoms control. Dr. Forth noted, however, that MacNeil's responses and reported limitations had remained consistent over the course of several surveys of her symptoms.

In addition to her physical impairment, MacNeil has a history of depression for which she began treatment in July, 2008. Therapy notes between late 2008 and early 2009 indicate that she suffered from major depressive disorder with symptoms of post-traumatic stress disorder. Her demeanor was depressed, tearful and grief-stricken but, with her therapist, she was engaging and pleasant. She reported diminished interest, insomnia and restlessness, as well as difficulty in making plans for herself. She exhibited intact memory, good concentration and attention, an ability to relate well with others and an ability to follow through with assigned tasks even when experiencing symptoms. She was easily overwhelmed, however, by interpersonal conflict and routine schedule changes. She maintained a close relationship with her mother and sister.

Dr. Miriam Goodman became MacNeil's treating psychiatrist in March, 2009. At that time, Dr. Goodman noted that MacNeil was having trouble sleeping and was tearful and anxious. She was, however, alert, oriented, logical and coherent, and demonstrated an intact memory and sustained attention. She exhibited an appropriate appearance and a cooperative and hopeful attitude.

Subsequently, in June, 2010, Dr. Goodman completed an RFC form regarding Plaintiff's mental impairments. Dr. Goodman indicated that MacNeil exhibited a "moderately severe" degree of limitation with respect to her ability to relate to others, understand, carry out and remember instructions, respond appropriately to supervisors and coworkers and perform simple, complex, repetitive or varied tasks. Dr. Goodman also indicated that MacNeil suffered no side effects from medication but that her condition had a "negative effect on mood, mobility, with decrease in ability to function."

In June, 2009, Dr. Michael Maliszewski, a state agency physician, reviewed the evidentiary record and concluded that MacNeil had intact attention sufficient to per-

form simple tasks, intact social skills and the ability to perform concrete tasks in a normal supportive work setting. In November, 2009, Dr. M.A. Gopal, a state agency physician, reviewed the evidentiary record and concluded that MacNeil was capable of performing light work.

In an undated Function Report, MacNeil reported that on a typical day she watched television, cooked for herself, cleaned or washed dishes and "scrap booked". She also cared for her cat, shopped for food three times per month for 20 minutes at a time, used public transportation when necessary and did not have problems getting along with others. She reported feeling depressed and easily overwhelmed by stress, trouble concentrating and difficulty bending, lifting, squatting and walking.

At a hearing before the Administrative Law Judge, MacNeil testified that she experiences pain in her lower and mid-back and is taking Lyrica. In terms of her daily activities, she reported that she 1) drives occasionally, does some limited household chores with help, prepares meals for her children and helps them with their homework, 2) is limited in her ability to bend, lift, and walk and, if she goes for a walk, must take a break every few minutes, 3) does not exercise and 4) often experiences back spasms which force her to lie or sit down for 30 to 45 minutes at a time and, sometimes, her back goes out of line and she is confined to bed for weeks.

MacNeil also testified that her prescribed medicines include Abilify, Konopin, Wellbutrin and Trazadone, all for depression. The side effects, she said, render her zombie-like. She states that she has difficulty handling stress, cries frequently and leaves her home only when necessary.

## II. *Procedural History*

In June, 2008, MacNeil applied for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits, alleging an inability to work from that time forward due to back problems and depression. Her application was denied initially in December, 2008 and was denied upon reconsideration in June, 2009.

In November, 2010, Administrative Law Judge ("ALJ") Sean Teehan heard testimony regarding MacNeil's alleged disability from MacNeil and a vocational expert, James D. Sarno. MacNeil was represented at the hearing by counsel.

In December, 2010, the ALJ affirmed denial of SSDI benefits after application of the "five-step sequential evaluation process."[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 23, 2008, her alleged onset date. At step two, the ALJ found that plaintiff suffered the following severe impairments: compression fracture of the L1 vertebrae, status post vertebroplasty, degenerative disc disease of the lumbar spine and depression. At step three, the ALJ concluded that plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, with special consideration given to Listing 1.04, "Disorders of the Spine", and Listing 12.04, "Affective Disorders".

At step four, the ALJ determined that MacNeil had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with certain added restrictions. Finally, at step five, the ALJ found that MacNeil's age, RFC, education and work experience indicated she was able to per-

---

**2.** The sequential evaluation process is a series of five "steps" that ALJs follow in order to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

form work as a cashier at a gas station and as an assembler.

Because the Decision Review Board ("DRB") did not act on the Commissioner's decision within the allotted 90–day period, the ALJ's decision became final. On May 27, 2011, MacNeil filed her complaint in this Court appealing the denial of her application for SSI benefits only.

### III. *Analysis*

#### A. Legal Standard

■ To obtain benefits under § 1602 of the Social Security Act, 42 U.S.C. § 1381a ("the Act"), an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The impairment must be of such severity that the claimant is not only unable to continue her previous work, but also unable to engage in other kinds of substantial work that exist in the national economy fitting her age, education and work experience. *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 79 (1st Cir.1982).

■ The Act gives federal district courts the power to affirm, modify or reverse the ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). Review under Section 405(g) is not *de novo*, however. *See Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 129 (1st Cir.1981). The Act provides that the findings of the Commissioner are conclusive so long as 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. *See id.; Seavey v. Barnhart*, 276

F.3d 1, 9 (1st Cir.2001). If these two criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. *See Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1999).

#### B. Application

■ MacNeil contends that the ALJ erred at step 3 by determining that neither her physical nor her mental impairment qualifies as a "listed impairment" under 1) Listing 1.04 ("Listing 1.04"), which governs "disorders of the spine", and 2) Listing 12.04 ("Section 12.04"), which governs "Affective Disorders". A finding that a claimant suffers from a listed impairment is critical because it results in an automatic finding of disability. *See* 20 C.F.R. § 416.920(d). The burden is on the claimant, however, to produce evidence that she satisfies the criteria for a particular "listed" condition. *See Mills v. Apfel*, 244 F.3d 1, 6 (1st Cir.2001).

■ To prove that her impairment matches a listing, a claimant must meet *all* of the medical criteria specified in a listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

#### 1. Listing 1.04

For injuries to the spine under Listing 1.04, a claimant must demonstrate

1) a disorder of the spine (such as herniated nucleus pulposus or degenerative disc disease) which compromises the nerve root or spinal cord, with

a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or

b) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

c) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Here, the ALJ found that MacNeil did not meet or equal that listing because there was no evidence of nerve root compression, spinal arachnoiditis or an inability to ambulate effectively. To support that conclusion, the ALJ relied primarily upon the November, 2009 MRI and reports submitted by Drs. Girgis, Wakefield and McGuire. He afforded little weight to the reports of Nurse Practitioner Fryer and Dr. Forth after determining that those reports were inconsistent with the medical evidence of record.

■ MacNeil contends that the ALJ improperly disregarded evidence of nerve root compression, including the report of Dr. Forth, her treating physician, and MRIs taken in June, 2008. Even if such

evidence indicates nerve root compression, however, no evidence suggests that the compression was characterized by motor, sensory or reflex loss, as required under Listing 1.04. As the ALJ discussed later in his opinion, examining physicians throughout the relevant period agreed that MacNeil retained excellent or good motor strength in all extremities and that her sensory functioning and reflexes were normal. Thus, the ALJ's decision that Mac-Neil's physical impairment does not satisfy the criteria of Listing 1.04 is reasonably supported by objective medical evidence.

■ To the extent that Dr. Forth reached contrary conclusions, the ALJ accorded them little weight. A treating physician's medical opinion is only entitled to controlling weight when it is 1) medically well-supported and 2) not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ determined Dr. Forth's conclusions to be unsupported by the medical evidence of record and contradicted by the findings of Dr. McGuire who concluded that there was no "critical stenosis" of the spinal canal. The ALJ noted that Dr. McGuire, a spinal surgeon and Chief of orthopaedic spine service at Beth Israel Deconness Medical Center, was best qualified to determine whether MacNeil's reported symptoms and limitations were consistent with her MRIs. Finally, the ALJ noted that the purported surveys in which MacNeil consistently described her symptoms had not been offered into evidence.

■ Given those inconsistencies, the ALJ reasonably declined to accord Dr. Forth's opinion controlling weight. Resolution of conflicts in the record is the primary responsibility of the Commissioner, and the Court must affirm that resolution where, as here, it is supported by substantial evidence, "even if the record arguably

could justify a different conclusion". *See Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

■ MacNeil also argues that the ALJ did not adequately consider her allegations of pain in determining whether she met or equaled a listed impairment. As the Commissioner points out, however, a determination at step 3 is made primarily by reference to objective medical evidence. At step 4, when considering a claimant's RFC, the ALJ may need to evaluate the credibility of a claimant's subjective complaints. *See Anderson v. Astrue*, 682 F.Supp.2d 89, 97 (D.Mass.2010).

In any event, at step 4, the ALJ considered MacNeil's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms but found them to be implausible to the extent alleged. His analysis was thorough, comprehensive and amply supported by the record as a whole, and the plaintiff has failed to offer any viable reason for this Court to disturb his decision.

### 2. Listing 12.04

For affective disorders under Listing 12.04, a claimant must demonstrate 1) the medically documented persistence of a number of different depressive-disorder related symptoms that 2) results in marked limitations in at least two out of four different categories. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.04(A) and (B), respectively. The categories under the second requirement are:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

A "marked" limitation "means more than moderate but less than extreme". *See id.* § 12.00, ¶ C. The degree of limitation must be "such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

■ Here, the ALJ determined that MacNeil was only mildly or moderately impaired with respect to the first three categories and noted that the record contained no indication with respect to the fourth. MacNeil argues his determination improperly disregarded the conclusion of her treating psychiatrist, Dr. Miriam Goodman, which should have been accorded controlling weight.

Dr. Goodman completed an RFC questionnaire in which she indicated that MacNeil suffered "moderately severe" limitations with respect to the above-listed criteria. The ALJ accorded that opinion little weight after determining it to be "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." The ALJ instead relied upon treatment notes and Mac-Neil's testimony with respect to her daily activities to arrive at his decision.

The Court concludes that the ALJ was not obligated to accept Dr. Goodman's summary opinion as controlling. That opinion is, as the ALJ noted, entirely conclusory and fails to specify what, if any, medical evidence supports the conclusion that MacNeil's functional limitations were "moderately severe". Furthermore, it is inconsistent with observations recorded in the treatment notes of Dr. Goodman, among others. Dr. Goodman's notes from early 2009 indicate, *inter alia*, that Mac-Neil demonstrated an intact memory and sustained attention. Therapy notes between late 2008 and early 2009 also indicate that MacNeil had good concentration and attention, an ability to relate to others

and to follow through with assigned tasks even when experiencing symptoms.

MacNeil herself reported a close relationship with her mother and sister and denied difficulty getting along with others. As the ALJ remarked, she also reported being able to care for her personal hygiene, drive when she has access to a car, shop with her mother and sister and do general cleaning and cooking.

In light of that evidence, the Court concludes that the ALJ 1) acted reasonably in declining to accord Dr. Goodman's opinion controlling weight and 2) rendered conclusions with respect to the extent of claimant's limitations that were reasonably supported by the record as a whole. Accordingly, the Court will affirm the Commissioner's decision.

## ORDER

In accordance with the foregoing, defendant's Motion for Order Affirming the Commissioner's Decision (Docket No. 10) is **ALLOWED.**

**So ordered.**

